IN RE INTEREST OF ETHAN M., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. DANIEL M., APPELLANT,
AND THERESA S., APPELLEE.

IN RE INTEREST OF CHLOE H. AND KATRINA H.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. AMANDA H.,
APPELLANT, AND JAMES N. AND
STANLEY H., APPELLEES.

723 N.W.2d 363

Filed October 31, 2006. Nos. A-06-179 through A-06-181.

Jerom E. Janulewicz, of Mayer, Burns, Koenig & Janulewicz, for appellant Daniel M.

Julianna S. Jenkins, of Sennett, Duncan, Borders & Jenkins, P.C., L.L.O., for appellant Amanda H.

Jon Bruning, Attorney General, Monika E. Anderson, Special Assistant Attorney General, and Mark Eurek, Sherman County Attorney, for appellee State of Nebraska.

Jason S. White for appellee Theresa S.

Gregory G. Jensen for appellees James N. and Stanley H.

William J. Erickson, guardian ad litem.

IRWIN, SIEVERS, and CARLSON, Judges.

SIEVERS, Judge.

Daniel M. appeals the disposition order of the Sherman County Court, sitting as a juvenile court, regarding Daniel's son, Ethan M. Amanda H. appeals the disposition order of the Sherman County Court, sitting as a juvenile court, regarding Amanda's daughters, Chloe H. and Katrina H. While these three appeals are separately docketed, they have been consolidated for briefing and argument, and we find it most efficient to write one opinion, given that Daniel and Amanda are now married and were living together with the three children at the time of the events involved in this case—even though Daniel is the natural father of only one of the three children and Amanda is the natural mother of only the other two of the three children.

## I. FACTUAL BACKGROUND

Ethan, born January 18, 2000, is the biological child of Daniel and Theresa M., now known as Theresa S. due to her remarriage. Daniel and Theresa were divorced in January 2002, and Daniel received primary physical custody of Ethan.

Amanda is the biological mother of Chloe, born August 9, 2000, and Katrina, born March 27, 2004. Chloe's biological father is James N., and Katrina's biological father is Stanley H. Amanda was never married to either James or Stanley.

Daniel and Amanda, along with Ethan, Chloe, and Katrina, began living together in September 2004. Daniel and Amanda were married on February 15, 2005 (after the juvenile petitions herein were filed). In January, Chloe sustained bruises on her body, scratches about her face and neck, and a black eye. Although Amanda initially blamed Ethan for Chloe's injuries and

maintained that story for several months, Amanda ultimately admitted that she caused Chloe's injuries. Daniel also came to admit that he was aware that Chloe's injuries were caused by Amanda, but he, too, let the blame lie with Ethan for several months.

Katrina suffered a fractured elbow diagnosed on December 22, 2004, and a fractured skull diagnosed on January 26, 2005. Daniel and Amanda deny inflicting such injuries. The skull fracture and a subdural hematoma were diagnosed after Katrina suffered two seizures. Ethan sustained no injuries. On January 27, all three children were removed from the home and placed into emergency foster care.

## II. PROCEDURAL BACKGROUND

At the outset, it is important to point out that there was some confusion as to whether the exhibits and testimony would be offered and considered in only a particular child's case or in all three cases collectively. The bill of exceptions reveals that all exhibits and testimony apparently would be considered in all three cases collectively. Upon inquiry at oral argument, counsel agreed that such was the procedure followed, and as a result, we consider all the exhibits and testimony as being admitted in all three cases.

### 1. ETHAN

On April 19, 2005, the amended juvenile petition for Ethan was filed, alleging that he was "in a situation dangerous to life or limb or injurious to the health or morals of such juvenile" pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004), because other children residing within the family structure had suffered injuries, including a black eye, bruises, scratches, a fractured arm, and a subdural hematoma. Daniel pled "no contest" to the allegations, and Ethan was adjudicated accordingly.

On July 5, 2005, the guardian ad litem filed his objection to the case plan and court report filed on May 31 and alleged that reunification of Ethan with Daniel and Amanda is not in Ethan's best interests and that such reunification is "unnecessary and unwise under the provisions of [Neb. Rev. Stat.] § 43-283.01(4) [(Reissue 2004)]." On July 14, Daniel filed his amended objection to the May 31 case plan. In Daniel's objection, he alleges

that (1) the case plan fails to establish as a priority the reunification of Ethan with Daniel, from whose home Ethan was removed; (2) the case plan fails to establish a reasonable and timely date for reunification of Ethan with Daniel; (3) the goals of the case plan are not specific enough to allow for the successful reunification of Ethan with Daniel; (4) the case plan purports to provide to the Nebraska Department of Health and Human Services (DHHS) the authority to add new tasks to such plan at the discretion of DHHS and without court approval; (5) the case plan includes tasks which duplicate tasks that have been completed by Daniel; (6) the case plan requires Daniel to complete tasks that are not reasonably related to correcting or ameliorating the conditions leading to the adjudication of Ethan; and (7) immediate reunification of Ethan with Daniel is in Ethan's best interests and is not contrary to his welfare.

On September 16, 2005, DHHS sent a letter informing the court that beginning October 17, Ethan was being placed with his biological mother, Theresa. On September 19, Daniel filed his "Objection to Change of Placement and Application for Stay," and a stay of the placement with Theresa was granted by the juvenile court via a journal entry filed on December 29.

After a hearing, the juvenile court rendered its decision on January 26, 2006. The juvenile court (1) approved and adopted the case plan and court report; (2) sustained the guardian ad litem's objection to the case plan and court report, finding by clear and convincing evidence that Daniel and Amanda have subjected Ethan to aggravated circumstances, including but not limited to chronic abuse, and finding that DHHS thus is not required to make reasonable efforts to reunify Ethan with Daniel and Amanda; (3) committed Ethan to the care, custody, and control of DHHS; (4) approved the immediate change of placement of Ethan from the home of his paternal grandparents to the home of his biological mother, Theresa; and (5) ordered Daniel and Amanda to comply with specific goals of the case plan which relate to continued visitation but not reunification, said conditions to remain in effect for a period of 1 year. On January 18, 2006, DHHS sent a letter informing the court that effective January 28, Ethan was being placed with his biological mother, Theresa.

Daniel timely appeals from that portion of the juvenile court's order of January 26, 2006, concerning Ethan.

## 2. CHLOE AND KATRINA

On January 28, 2005, the juvenile petition for Chloe was filed, and on April 19, the amended juvenile petition for Katrina was filed. The petitions alleged that they were minor children as defined by § 43-247(3)(a). Specifically, the petitions alleged that Chloe sustained intentional injuries while in the care and custody of a parent or caretaker while she was in "the family home or shop," that Katrina sustained unexplained injuries while in the care and custody of the parent or caretaker through neglect while she was in "the family home or shop," and that there were injuries to other children in the family, which injuries were caused by Amanda's neglect or may have been caused by actions of Amanda or other persons residing in "the family home or at the shop." Amanda admitted the allegations in Chloe's petition and pled "no contest" to the allegations in Katrina's petition. Chloe and Katrina were adjudicated accordingly.

On June 20, 2005, Amanda filed her objections to the May 31 case plan. In Amanda's objections, she alleged that (1) the case plan fails to establish as a priority the reunification of Chloe and Katrina with Amanda, from whose home the girls were removed; (2) the case plan fails to establish a reasonable and timely date for reunification of Chloe and Katrina with Amanda; and (3) the goals of the case plan are not specific enough to allow for the successful reunification of Chloe and Katrina with Amanda. On July 5, the guardian ad litem filed his objections to the May 31 case plan and court report, alleging that reunification of Chloe and Katrina with Daniel and Amanda is not in the girls' best interests and that such reunification is "unnecessary and unwise under the provisions of [Neb. Rev. Stat.] § 43-283.01(4) [(Reissue 2004)]."

After a hearing, the juvenile court rendered its decision on January 26, 2006. The juvenile court (1) approved and adopted the case plan and court report; (2) sustained the guardian ad litem's objection to the case plan and court report, finding by clear and convincing evidence that Daniel and Amanda have subjected Chloe and Katrina to aggravated circumstances, including but not limited to chronic abuse, and finding that DHHS thus is not

required to make reasonable efforts to reunify Chloe and Katrina with Daniel and Amanda; (3) committed Chloe and Katrina to the care, custody, and control of DHHS; (4) found that physical placement of Chloe with her biological father, James, and Katrina with her biological father, Stanley, appears appropriate; and (5) ordered Daniel and Amanda to comply with specific goals of the case plan which relate to continued visitation but not reunification, said conditions to remain in effect for a period of 1 year.

Amanda timely appeals from that portion of the juvenile court's orders of January 26, 2006, affecting Chloe and Katrina.

## III. ASSIGNMENTS OF ERROR

Daniel alleges that the trial court erred in (1) finding that the existence of aggravated circumstances eliminated the need for reasonable efforts to reunify Ethan with Daniel, (2) failing to consider and determine whether Ethan's best interests required reasonable efforts at reunification with Daniel, (3) finding that continuation of Ethan in Daniel's home is not in Ethan's best interests, (4) finding that reasonable efforts have failed to prevent or eliminate the need for removal of Ethan from the home or make it possible for Ethan to safely return to the home of Daniel and Amanda, (5) approving the change of placement of Ethan from the home of his grandparents to the home of Theresa, and (6) ordering a final disposition that is not in the best interests of Ethan.

Amanda alleges that the trial court erred in (1) finding that the guardian ad litem proved by clear and convincing evidence that Daniel and Amanda have subjected the juveniles to aggravated circumstances, including but not limited to chronic abuse; (2) finding that DHHS is not required to make reasonable efforts to reunify the juveniles with Amanda; (3) finding that Amanda failed to prove by a reasonable preponderance of the evidence that the case plan and court report are not in the best interests of Chloe and Katrina; and (4) finding that the reasonable efforts made by DHHS have failed to prevent or eliminate the need for removal from the home or make it possible for the juveniles to safely return home.

## IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of

the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005).

## V. ANALYSIS

### 1. WHO IS THE PARENT OF WHOM?

 This case involves the fundamental question of whether DHHS must make reasonable efforts to reunify the "family." Before that question can be answered with respect to any of the three children involved in these cases, there is a predicate question: "Who is the parent of whom?" The question arises by virtue of the language of Neb. Rev. Stat. § 43-283.01 (Reissue 2004), which states in relevant part:

(4) Reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that:

(a) The parent of the juvenile has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse;

(b) The parent of the juvenile has (i) committed first or second degree murder to another child of the parent, (ii) committed voluntary manslaughter to another child of the parent, (iii) aided or abetted, attempted, conspired, or solicited to commit murder, or aided or abetted voluntary manslaughter of the juvenile or another child of the parent, or (iv) committed a felony assault which results in serious bodily injury to the juvenile or another minor child of the parent; or

(c) The parental rights of the parent to a sibling of the juvenile have been terminated involuntarily.

 Section 43-283.01 addresses when efforts at reunification of the "family" are required, but makes such efforts dependent on the conduct of "[t]he parent of the juvenile [toward either] the juvenile or another minor child of the parent." These cases involve multiple children with differing biological parents. For purposes of our analysis of these cases, the answer is provided by Neb. Rev. Stat. § 43-245(11) (Reissue 2004), which

says that "[p]arent means one or both parents or a stepparent when such stepparent is married to the custodial parent as of the filing of the petition."

Therefore, given that Daniel and Amanda were not married when the petitions were filed, Amanda is deemed to be the parent of Chloe and Katrina but not of Ethan, and Daniel is the parent of Ethan but not of Chloe and Katrina. During oral argument of these cases, there were numerous suggestions that we decide the cases by considering the "whole family" or the "family unit" composed of Daniel, Amanda, Ethan, Chloe, and Katrina, but § 43-245(11) does not allow us to do so. Thus, there are two family units: one consisting of Amanda, Chloe, and Katrina and another one consisting of Daniel and Ethan.

(a) Ethan

■ Daniel argues that the juvenile court erred in finding that the existence of aggravated circumstances eliminated the need for reasonable efforts to reunify Ethan with Daniel. In *In re Interest of Jac'Quez N.*, 266 Neb. 782, 789-90, 669 N.W.2d 429, 435 (2003), the Nebraska Supreme Court said:

Upon due consideration, we hold that a finding of a fact, such as aggravated circumstances under § 43-283.01(4)(a), that excuses the requirement of reasonable efforts at reunification under § 43-283.01(4) must be based on clear and convincing evidence. In connection with our ruling, we note that dispensing with reasonable efforts at reunification frequently amounts to a substantial step toward termination of parental rights. It follows that the requisite standard of proof for such determination should be at the level required for a termination of parental rights, and therefore the determination to excuse reasonable efforts at reunification under § 43-283.01(4) should be supported by clear and convincing evidence.

As outlined above, because Daniel became a stepparent of Chloe and Katrina after the petitions in these cases were filed, he is not their "parent" for purposes of determining the necessity of reasonable efforts at reunification with Ethan under § 43-283.01. Thus, whatever his actions or shortcomings may have been with respect to Chloe and Katrina, the fact is that our analysis in Ethan's case excludes consideration of what happened to Chloe

and Katrina because Daniel was not their "parent." And, because Amanda is likewise not a parent of Ethan, her actions toward Chloe and Katrina are not material when determining whether DHHS must make reasonable efforts to reunify Daniel and Ethan.

■ The record is clear that Ethan sustained no physical injuries while living with Daniel (and Amanda), nor is there evidence of any other type of abuse or neglect. In *In re Interest of Jac'Quez N., supra*, the Nebraska Supreme Court relied upon *New Jersey Div. v. A.R.G.*, 361 N.J. Super. 46, 77, 824 A.2d 213, 233 (2003), in which the Superior Court of New Jersey concluded that

> the term "aggravated circumstances" embodies the concept that the nature of the abuse or neglect must have been so severe or repetitive that to attempt reunification would jeopardize and compromise the safety of the child, and would place the child in a position of an unreasonable risk to be reabused.

Given that our Supreme Court embraced this definition of aggravated circumstances, we find that with respect to Ethan, there was no clear and convincing evidence of aggravated circumstances on the part of Daniel which would eliminate the requirement that reasonable efforts be made to preserve and reunify the family composed of Daniel and Ethan. As a result, in case No. A-06-179, we reverse the trial court's finding that such efforts need not be made with respect to Daniel. However, we are careful to point out that in our view, a child could be found to have been chronically abused by virtue of being present when his or her parent subjected a sibling or siblings to chronic abuse. But, again, as a matter of law under § 43-245(11), Daniel was not Chloe's or Katrina's parent, nor were the girls Ethan's siblings.

### (b) Placement of Ethan With Theresa

Daniel next argues that the juvenile court erred in approving the change of placement of Ethan from the home of his paternal grandparents to the home of Ethan's biological mother, Theresa, in California. When the juvenile court approved the placement of Ethan with Theresa in California, such action would obviously flow from the finding that the State did not have to make reasonable efforts to reunify Ethan with Daniel. However, given our finding that reasonable efforts to reunify Ethan and Daniel must be made, a placement of Ethan with Theresa in California

poses a substantial and unnecessary hindrance to efforts of reunification of Ethan with Daniel. Additionally, Daniel was awarded physical custody of Ethan at the time of Theresa and Daniel's California divorce—although the record before us is unclear as to whether this result derived from the parties' agreement or from a court decision after a custody contest. Nevertheless, the record before us contains substantial information about Theresa which reveals that she has mental illnesses of consequence, as well as a history of periodically leaving the marital home for significant timeframes, leaving Daniel to care for Ethan. We recognize that Theresa attributes such behavior to Daniel's abuse of her and Ethan, which assertion Daniel denies. Nonetheless, the fact is that by virtue of the California divorce decree, Daniel is Ethan's custodial parent.

Therefore, after consideration of these circumstances, and given our reversal of the trial court's finding that reasonable efforts to reunify Ethan with Daniel need not be made, we are compelled to conclude that Ethan should not be placed in California with Theresa (and must be returned if so placed) and that Ethan should be placed in a situation in Nebraska that is conducive to reunification with Daniel, be that in a foster care placement with his paternal grandparents or some other placement.

Additionally, as is evident from our discussion of Daniel's next assignment of error, Ethan's placement naturally includes consideration of immediate reunification with Daniel, but such is obviously dependent on the circumstances which exist at the time this matter is returned to the jurisdiction of the Sherman County Court, sitting as a juvenile court. Accordingly we sustain Daniel's second assignment of error.

### (c) Ethan's Best Interests

Daniel also argues that the juvenile court erred in finding that continuation of Ethan in Daniel's home is not in Ethan's best interests. We have already reversed portions of the disposition order, which reversal means that DHHS must make reasonable efforts to reunify Ethan with Daniel, and we have reversed the placement of Ethan in California with Theresa.

As to whether Ethan should be placed in Daniel's home, it is significant that Daniel has complied with all tasks required by the case plan and all recommendations made to him by the DHHS

caseworker. Daniel has attended parenting classes, completed a psychological evaluation, participated in therapy sessions, and attended all visitations with Ethan. The visitation reports show that Daniel and Ethan have a positive relationship and that all visits ended in hugs and kisses. Ethan's therapist testified that Ethan wants to go back home with Daniel. Daniel's therapist testified that he is amazed by Daniel's ability to handle stress in an appropriate manner, and he cannot identify anything where Daniel needs improvement. Despite all of Daniel's positive efforts, his visitation with Ethan (which initially was essentially unlimited and could be supervised by the paternal grandparents) has been inexplicably reduced by DHHS, such that all visits must now be supervised by an agency retained by DHHS. Given our conclusions detailed above and Daniel's complete and successful cooperation with the case plan, the visitation limitations imposed by DHHS are overly strict and unreasonable. Yet, given that our perspective is that of an appellate court, we are unwilling to order that Ethan be immediately returned to Daniel's custody, because such determination is best made by the trial court, given the passage of time during the appeal process. Equally important is that the best interests calculus for Ethan now clearly includes two important facts: First, Daniel and Amanda are now married, and second, our conclusions concerning Amanda's conduct as to Chloe and Katrina require that caution be exercised in returning Ethan to Daniel's custody, because Amanda, as Ethan's stepparent, is now obviously implicated when considering Ethan's best interests.

### 2. CHLOE AND KATRINA

Amanda argues that the juvenile court erred in finding the existence of aggravated circumstances and thereby eliminating the need for reasonable efforts to reunify Chloe and Katrina with Amanda. As stated previously, a finding of a fact, such as aggravated circumstances under § 43-283.01(4)(a), that excuses the requirement of reasonable efforts at reunification under § 43-283.01(4) must be based on clear and convincing evidence. *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003).

Amanda admits to one incident in which she inflicted bruising, scratches, and a black eye on Chloe. Amanda said she was under

stress due to Katrina's seizures and took out her frustrations on Chloe. Even if frustration was the reason for such conduct, it is certainly no excuse for abusing a child. We note that Amanda blamed Chloe's injuries on Ethan for 2 months before admitting her culpability. The photographs of Chloe's injuries are disconcerting to say the least, because they reveal a frightening level of abuse; although fortunately, Chloe did not sustain serious physical injuries.

Katrina, while an infant of 9 and then 10 months, sustained a fractured elbow and then a skull fracture with a subdural hematoma. There is no direct evidence of how these injuries were suffered, but neither Daniel nor Amanda, who were then living in the household, assign blame to each other or to any other person. Nor does either of them offer any plausible explanation which would eliminate human action as the cause of the infant's injuries. In *In re Interest of McCauley H.*, 3 Neb. App. 474, 529 N.W.2d 77 (1995), this court adopted the proposition that circumstantial evidence may be used to establish child neglect or child abuse. Although *In re Interest of McCauley H.* was an adjudication case—in which cases the burden of proof is "preponderance of the evidence"—circumstantial evidence may also be used in a disposition proceeding in which the burden of proof is "clear and convincing." A fact proved by circumstantial evidence is nonetheless a proven fact. *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995). Circumstantial evidence is not inherently less probative than direct evidence. *Id.* While the trial court did not make a specific finding of who inflicted such injuries on Katrina, its finding of "aggravated circumstances" which eliminated the need for DHHS to make reasonable efforts to reunify Amanda with her daughters at least implicitly suggests that the court considered Amanda to be culpable. After our de novo review of the record, we affirm the trial court's conclusion. It is important to recall what this court has stated in an earlier case:

> In endorsing the use of circumstantial evidence to establish child neglect or child abuse, it has been stated that "[l]earned commentators have pointed out that in many such cases the only proof available is circumstantial evidence since abusive actions usually occur within the privacy of the

home, the child is either intimidated or too young to testify, and the parents tend to protect each other." *Higgins*[ *v. Dallas Cty. Child Welfare Unit*], 544 S.W.2d [745,] 750 [(Tex. Civ. App. 1976), *overruled on other grounds, In re Interest of S.H.A.*, 728 S.W.2d 73 (Tex. App. 1987)]. See, also, Rowine H. Brown et al., *Medical and Legal Aspects of the Battered Child Syndrome*, 50 Chi.-Kent L. Rev. 45 (1973).

*In re Interest of McCauley H.*, 3 Neb. App. at 480-81, 529 N.W.2d at 82.

[A] finding of abuse or neglect may be supported where the record shows (1) a parent's control over the child during the period when the abuse or neglect occurred and (2) multiple injuries or other serious impairment of health have occurred which ordinarily would not occur in the absence of abuse or neglect.

*Id.* at 480, 529 N.W.2d at 82.

Amanda had control over Katrina when Katrina sustained her elbow and skull fractures. Although there was some evidence that Katrina was in daycare during the time in which the skull fracture could have occurred, there have been no charges filed against the daycare provider and the provider testified that neither Daniel nor Amanda accused her of causing Katrina's injuries. We have previously held that when parents offer no explanation as to a child's injuries and have no suspicions about the daycare providers or the other individuals who cared for the child previous to the injuries, and when the child's injuries would not have ordinarily occurred in the absence of abuse or neglect, expert testimony is not necessary to establish abuse. See *In re Interest of Sarah C. & Jason C.*, 10 Neb. App. 184, 626 N.W.2d 637 (2001). It is unnecessary for the State to prove the identity of the individual who inflicted a child's injuries. See *id.*

However, in this case, there is convincing expert medical evidence that Katrina's injuries were such that they would not ordinarily occur in the absence of abuse or neglect and that they were inflicted by human agency. In reaching this conclusion, we find the testimony of Dr. Jeffrey DeMare and his reports to be persuasive, given his established expertise with respect to child abuse and resulting injuries to small children. We briefly summarize Dr. DeMare's opinions as follows: He opined that the skull fracture

and hematoma were not caused by the seizures, but, rather, that Katrina's head injury was inflicted by "someone with a significant amount of strength and force to cause this injury. [A] fall from a couple of stories or a high-speed car accident . . . is an accurate comparison." Dr. DeMare said that while a fall from 3 to 6 feet can cause a skull fracture, Katrina's symptoms indicated that far more force was used, and that the symptoms would have manifested almost immediately and certainly within 20 minutes. Katrina suffered two seizures between January 20 and 25, and on each occasion, she was at home with Amanda in the 20 minutes prior to the seizures.

Dr. DeMare testified that the elbow injury was a "bucket-handle" fracture, which is rarely seen and occurs only when an adult pulls on a baby's limb hard enough to break the bone apart, because in a small child, the tendons in the joint are stronger than the bone at the joint, so "you've got two pieces [of bone] and you pull them apart, instead of the connective tissue breaking, you actually break the bone." Dr. DeMare said that this is a "very specific . . . injury in kids and it implies a specific mechanism as to how it happens." He further said that this injury is very painful until the bone is immobilized, because the bone grinds against itself. Given that a child of Katrina's age lacks mobility and requires constant care and monitoring, the absence of a parental explanation was characterized as a further sign of abuse. With respect to Chloe, Dr. DeMare said that the number, location, and placement of the injuries indicated adult infliction on multiple occasions. After thoroughly reviewing the record, we find clear and convincing evidence that Amanda—as Katrina's parent, caregiver, and custodian—was responsible for Katrina's injuries by either inflicting them herself or by failing to protect Katrina from abuse by Daniel, the only two realistic causative agents shown by the evidence. However, we find it much more likely that Katrina was abused by Amanda, given her admitted brutalization of Chloe.

We now turn to the question of whether "aggravated circumstances" have been proved. We recall the definition of that concept earlier set forth in this opinion: The nature of the abuse or neglect must have been so severe or repetitive that to attempt reunification would jeopardize and compromise the safety of the

child, and would pose an unreasonable risk that the child would be reabused. See *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003). We are convinced that both Chloe and Katrina have been abused on multiple occasions while in Amanda's control, and thus, each child has been chronically abused and is at risk for additional abuse. The nature of the previous abuse is such that under the above definition, "aggravated circumstances" have been proved and reasonable efforts to reunify Amanda with her daughters Chloe and Katrina need not be undertaken. We affirm the trial court's finding in this regard.

## VI. CONCLUSION

For the reasons stated above, we find that DHHS must make reasonable efforts to reunify Ethan with Daniel. We further find that Ethan should not be placed with Theresa in California and that if Ethan is so placed, he must be returned to Nebraska. Thus, Ethan's case is reversed and remanded for further proceedings consistent with our opinion.

We find that there is clear and convincing evidence that Chloe and Katrina were chronically abused by Amanda and that DHHS therefore does not need to make reasonable efforts to reunify Chloe and Katrina with Amanda, and thus, the lower court's decision is affirmed.

Clearly, the result in these cases is driven by the statutory definition of "parent" in § 43-245(11), coupled with the fact that Daniel and Amanda did not marry until after the juvenile petitions were filed, which fact could potentially have the paradoxical consequence that Ethan resides with Amanda, whom we have found has chronically abused Chloe and Katrina. To the extent that a shortcoming in the statutory definition of "parent" is thereby revealed, the remedy is by legislative action, since we cannot rewrite the statute.

JUDGMENT IN No. A-06-179 REVERSED, AND CAUSE REMANDED WITH DIRECTIONS.
JUDGMENTS IN Nos. A-06-180 AND A-06-181 AFFIRMED.