774 N.W.2d 766 (2009)
18 Neb. App. 63
In re Interest of ETHAN M., a child under 18 years of age.
State of Nebraska, appellee,
v.
Theresa S., appellee, and
Daniel M., appellant.
No. A-09-282.
Court of Appeals of Nebraska.
October 13, 2009.
*768 Jerom E. Janulewicz, Grand Island, of Mayer, Burns, Koenig & Janulewicz, for appellant.
Mark L. Eurek, Sherman County Attorney, and Monika E. Anderson, Special Assistant Attorney General, for appellee State of Nebraska.
Jason S. White, Broken Bow, for appellee Theresa S.
William J. Erickson, Broken Bow, guardian ad litem.
SIEVERS, CARLSON, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Previously, in In re Interest of Ethan M., 15 Neb.App. 148, 723 N.W.2d 363 (2006), we decided that reasonable efforts had to be made to reunite Ethan M. with his father, Daniel M., who has primary physical custody of Ethan pursuant to a divorce decree. Ethan was never returned to his father and is still placed with his mother, Theresa S. In the instant case, the county court entered an order adopting a case plan which purported to terminate almost all of Ethan's parenting time with Daniel; placed care, custody, and control of Ethan with Theresa; and dismissed the juvenile case. Because the order does not permanently modify child custody and is a dispositional order, the dismissal of this case will render the remainder of the court's final order unenforceable. Because the only remaining enforceable order regarding child custody is the divorce decree placing physical custody of Ethan with Daniel and neither the court nor the Department of Health and Human Services (DHHS) intended this outcome, we find that the county court committed plain error in entering such an order and remand this cause for further proceedings consistent with this decision.

BACKGROUND
Ethan is the child of Daniel and Theresa. When they divorced, Daniel received primary physical custody of Ethan pursuant to a divorce decree. While Ethan was in Daniel's custody, Daniel lived with and later married Amanda H., who had custody of her two children. According to our previous opinion, while Amanda and Daniel lived together but before they married, Amanda's two children suffered serious bodily injuries. Both of Amanda's children *769 and Ethan were removed from the home and adjudicated to be children within the meaning of Neb.Rev.Stat. § 43-247(3)(a) (Reissue 2004). However, in this time period, Ethan sustained no physical injuries and was not abused or neglected.
The county court found that DHHS did not have to make reasonable efforts to reunify the family pursuant to Neb.Rev. Stat. § 43-283.01(4) (Reissue 2004) because a parent had "subjected the juvenile to aggravated circumstances, including, but not limited to ... chronic abuse." Based upon this finding, the court placed Ethan with his mother, who resided in California. This was the matter before us in In re Interest of Ethan M., supra, where we reversed the county court's finding regarding reasonable efforts as to Ethan because (1) Amanda did not fulfill the statutory definition of "parent" as to Ethan, since she was not married to Daniel when the petition for adjudication was filed, and (2) Daniel had not harmed his own children. We ordered that "Ethan should be placed in a situation in Nebraska that is conducive to reunification with Daniel," but did not order that Ethan be immediately returned to Daniel's custody because Daniel was then married to Amanda, who had admitted to abusing one of her own children. Id. at 158, 723 N.W.2d at 371.
Ethan subsequently returned to Nebraska and resided with Theresa and her current husband. Upon Ethan's return, DHHS arranged for supervised in-person visitation between Daniel and Ethan. The visits were to occur weekly. This visitation began in June 2007. In August, after Ethan was hospitalized for mental health issues, the visitation became therapeutic visitation, which meant that it was supervised by a mental health professional. In September, the visitation ceased because DHHS was unable to find a mental health professional who could provide supervision. In-person visitation has not resumed. The only other interaction which Ethan has with his father consists of telephonic visitation which DHHS arranged to occur on Tuesdays and Thursdays. Ethan often ends these telephone calls quickly or refuses to speak with his father. However, this form of visitation was ongoing at the time of trial.
Ethan has been diagnosed with mental health problems requiring extensive treatment, including anxiety disorder and attention deficit hyperactivity disorder. Psychological reports did not reach any clear conclusion about the source of Ethan's problems. However, in totality, evidence adduced from mental health professionals suggests that Ethan's symptoms are consistent with either (1) Daniel's abusing either Ethan or Ethan's stepsiblings, which abuse may have been real, greatly enhanced by Ethan's reports, or imagined, or (2) neglect and numerous changes. Additionally, the general consensus of the mental health professionals who have seen Ethan is that he is imaginative and does not always tell the truth.
After Ethan returned from California, he repeatedly expressed that he hated his father, was fearful of him, and believed that he abused children. According to a licensed mental health professional who worked extensively with Ethan, Ethan expressed severe anxiety regarding visits with his father. Further, Theresa may have been making statements to Ethan to encourage him to express his dislike for his father. The record reflects that Ethan did not have such extensive problems in his relationship with his father after he was removed from his father's care but prior to moving to California. At that time, Ethan had regular visitation with Daniel and was not fearful of Daniel. The records of visitation reflect that there were *770 no serious problems, but that Ethan would often become very upset when things did not go his way.
Daniel's living situation has changed because he separated from Amanda. Daniel was convicted of stalking Amanda and charged with violating a protection order. Theresa also has certain problems in that she has a longstanding diagnosis of bipolar disorder.
Ultimately, DHHS submitted a case plan to the county court dated January 15, 2009, which recommended that "the care, custody, and control of ... Ethan be moved to Theresa," that telephonic visitation continue, that "Ethan's therapist work[] with Ethan on having contact with his father again sometime in the future when Ethan is ready," and that the case be dismissed. At a January 22 proceeding, the court heard Daniel's objection to the plan, his motion for a change in Ethan's placement, and his motion to require DHHS to make reasonable efforts to reunify him with Ethan.
On February 20, 2009, the court adopted the DHHS case plan. The court found that "the evidence failed to establish that the plan was contrary to the best interest[s] of the juvenile." The court determined that reasonable efforts to reunify were no longer necessary as to Daniel. In the same vein, the court found that the permanency plan had changed from reunification with the father to placement with the mother; ordered that "the care, custody[,] and control of Ethan ... be placed with Theresa"; and dismissed the case.
Daniel timely appeals.

ASSIGNMENTS OF ERROR
Daniel alleges, restated, that the county court erred in (1) finding that reasonable efforts were made toward reunification; (2) finding that a lack of progress was made toward reunification; (3) finding that Daniel failed to fulfill his burden to prove that the DHHS case plan was not in Ethan's best interests; (4) approving and adopting the DHHS case plan, placing custody of Ethan with his mother, and dismissing the juvenile case; and (5) entering a decision contrary to our previous opinion in this matter.

STANDARD OF REVIEW
When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).

ANALYSIS
Briefly summarized, Daniel's assignments of error are all related to the fact that the county court's order purported to place custody of Ethan with Theresa and practically eliminate his parenting time, but did not require DHHS to make any further efforts to reunify him with Ethan. Further, the parties premise their arguments on a belief that the county court's order modified the previous custody determination. Thus, in order to reach Daniel's assigned errors, we are required to first determine the effect of the county court's final order. Ultimately, we do not reach Daniel's assigned errors because we find plain error in the final order.

Final Order Does Not Modify Child Custody.
First, because the parties seem to have interpreted the county court's order as a permanent determination of child custody, we must determine whether the order has such effect. Daniel's understanding of the situation is that "custody has been placed with [the] mother" and that the court's order "provides no mechanism to re-evaluate *771 at any time in the future the re-establishment of visitation between Ethan and [Daniel]." Brief for appellant at 19, 16. The brief submitted by DHHS, the county attorney, the guardian ad litem, and Theresa explicitly states that the county court's order was a "custody determination." Brief for appellees at 12. However, we conclude that this interpretation is not correct. In this instance, because custody had already been determined pursuant to a divorce decree, a custody determination would consist of a custody modification order. Because we conclude that no custody modification proceeding occurred, the court could not enter an order modifying child custody.
We begin by noting that a county court sitting as a juvenile court has the power to conduct a child custody modification proceeding because it has been granted subject matter jurisdiction to do so. Pursuant to 2008 Neb. Laws, L.B. 280, the Legislature modified the jurisdiction of juvenile courts and county courts sitting as juvenile courts so that these courts could exercise jurisdiction over custody matters when the court already has jurisdiction over the juvenile for another purpose. See Neb.Rev.Stat. §§ 24-517, 25-2740, and 43-247 (Reissue 2008). In this regard, § 25-2740(3) provides that "a county court or separate juvenile court which already has jurisdiction over the child whose paternity or custody is to be determined has jurisdiction over such paternity or custody determination." Pursuant to § 25-2740(1)(b), a custody determination is defined as a proceeding "to determine custody of a child under [Neb.Rev.Stat. §] 42-364 [(Reissue 2008)]." Neb.Rev.Stat. § 42-364 (Reissue 2008) pertains to custody actions including those involving "[m]odification proceedings." Prior to the passage of L.B. 280, juvenile courts and county courts sitting as juvenile courts did not have subject matter jurisdiction over such proceedings.
In the instant case, the county court could have exercised this jurisdiction to modify custody because Ethan was already within the court's jurisdiction as a child found to be within the meaning of § 43-247(3)(a) and a modification is a "custody determination" pursuant to § 42-364.
However, we conclude that the county court did not exercise such jurisdiction. We conclude that in passing L.B. 280, the Legislature's explicit intent was to vest the juvenile courts and the county courts with jurisdiction to make a custody determination pursuant to § 42-364 under the same standards applicable to a custody modification proceeding heard in district court. First, L.B. 280 incorporates other statutes which normally govern the applicable procedure in all other custody proceedings. Section 25-2740(1)(b) and (3), as amended by L.B. 280, provides for juvenile courts to have jurisdiction over "proceedings to establish the paternity of a child under sections 43-1411 to 43-1418 or proceedings to determine custody of a child under section 42-364." Section 42-364 generally sets forth the procedure and applicable standards for the determination of custody in paternity actions, dissolution proceedings, and the modification of custody orders. See, § 42-364 (specifying that it governs actions "under Chapter 42," which are dissolution proceedings); State on behalf of Pathammavong v. Pathammavong, 268 Neb. 1, 679 N.W.2d 749 (2004) (applying § 42-364 to custody determination in paternity action). Second, L.B. 280 does not amend § 42-364, provide a procedure separate from § 42-364, or purport to modify any other rule governing the determination of custody in dissolution proceedings, paternity actions, or modification proceedings. It simply provides for jurisdiction.
*772 For the sake of completeness, we have reviewed the legislative history of L.B. 280, which shows that in passing L.B. 280, the Legislature did not intend to modify procedure, but, rather, intended to expand the jurisdiction of juvenile and county courts. Senator Arnie Stuthman, in introducing this bill on the floor of the Legislature, explained the purpose of L.B. 280 as follows:
LB 280 would give juvenile courts the jurisdiction to enter permanent custody orders for children that are involved in a juvenile case. In 2003 the Nebraska Supreme Court handed down a decision, Ponseigo v. Mary W., [267 Neb. 72, 672 N.W.2d 36 (2003),] that has been interpreted by the courts to mean that the district court has no jurisdiction to decide final custody of children when there is an accompanying juvenile action. Juvenile courts currently have no statutory authority to determine custody. Under the current statute and case law, the district courts and juvenile courts are unable to address the necessary amendments regarding physical placement or physical custody, and child support determinations to divorce, modification cases, or paternity custody actions when the parents were never married, that may be necessary to achieve permanency for children who have been made ward[s] of the state.... Some children, therefore, remain in limbo in juvenile court because custody cannot be established in juvenile court. Giving juvenile courts authority to enter final custody orders in cases in which the juvenile court is already involved would provide a timelier placement for children in state custody.
Floor Debate, L.B. 280, 100th Leg., 2d Sess. 30-31 (Feb. 6, 2008). From Senator Stuthman's statement regarding Ponseigo v. Mary W., 267 Neb. 72, 672 N.W.2d 36 (2003), it is readily apparent that the primary purpose of L.B. 280 was to remedy the problem that the district court, which normally determines custody, could not do so when the child was under the jurisdiction of the juvenile court. In Ponseigo v. Mary W., the Nebraska Supreme Court determined that the district court did not have jurisdiction to award grandparent visitation where the juvenile court had jurisdiction over the minor pursuant to § 43-247(3) (Reissue 1998). This decision was in part based on the court's determination that a juvenile court has exclusive jurisdiction over a juvenile adjudicated to be within § 43-247(3). Thus, it seems that Senator Stuthman wanted to ensure that there was a court which could fulfill the role normally played by the district court in custody determinationsnot to change the nature of custody determination proceedings. Because none of the additional legislative history indicates any legislative intent to materially modify the procedure in a custody determination, it appears that the Legislature simply intended to transplant custody proceedings from district court to juvenile and county courts under particular circumstances during certain juvenile proceedingsnot to modify the procedure applicable to a custody proceeding.
Thus, in the instant case, in order to modify custody, the county court was supposed to conduct a custody modification proceeding in the manner that a custody modification proceeding is normally conducted in district court. However, in substance, there was no proceeding that resembled a custody modification proceeding. First and most importantly, the county court applied an incorrect standard of proof. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. Heistand v. Heistand, *773 267 Neb. 300, 673 N.W.2d 541 (2004). In the instant case, the court modified custody based upon its finding that "the evidence failed to establish that [DHHS'] plan [which changed custody] was contrary to the best interests of the juvenile." This is the correct standard of proof for the approval of a DHHS case plan pursuant to Neb.Rev.Stat. § 43-285(2) (Reissue 2008), but it is not the standard of proof in a custody modification action. Under the standard the court applied. Theresa received custody because Daniel was unable to disprove that it was in Ethan's best interests. Under the custody modification standard, the moving party, whether it was the State or Theresa, would have to prove both that there was a material change in circumstances and that it was in Ethan's best interests that custody be granted to Theresa.
Second, the court did not even purport to follow certain requirements contained in § 42-364 which apply to modification actions. Pursuant to § 42-364(6), a custody modification action "shall be commenced by filing a complaint to modify." No such complaint was filed. Theresa filed a "motion for custody" which she withdrew and is not contained in the record. Additionally, the court failed to enter a parenting plan or calculate child support. In an action "involving child support, child custody, parenting time, visitation, or other access," § 42-364(1) requires that the final order incorporate a parenting plan and a child support order. Neither of these items was incorporated into the final order or discussed on the record.
For these reasons, we conclude that the county court did not conduct any proceeding which remotely resembled a child custody proceeding. We hold that where the only issue placed in front of the county court is whether a case plan is in the child's best interests, permanent child custody cannot be modified merely through the adoption of the case plan. However, we also emphasize that a case plan could be used to place a child with a noncustodial parent as a dispositional order under the continuing supervision of the juvenile court.

Effect of Order.
Because the county court's order does not modify custody, we must determine its precise effect. Since the county court's order places "custody" of Ethan with Theresa, it is best characterized as a dispositional order. Orders determining where a juvenile will be placed are dispositional in nature. In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008). Additionally, a dispositional order can include a court-ordered plan for parental rehabilitation, see In re Interest of Ty M. & Devon M., 265 Neb. 150, 655 N.W.2d 672 (2003), or services for the child, see In re Interest of Emily C., 15 Neb.App. 847, 738 N.W.2d 858 (2007). In light of the fact that this is a dispositional order and also dismissed the juvenile case, we must determine its effect on Ethan's placement.
By dismissing the case, the county court terminated its jurisdiction over the juvenile case. Section 43-247 (Reissue 2004) provides that "the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." Thus, the county court had the power to dismiss Ethan's case and, by doing so, ended the court's jurisdiction over the child.
Once the county court's jurisdiction ends, it lacks the power to enforce its previous dispositional orders. The juvenile court is a court of limited jurisdiction. As a statutorily created court of limited *774 and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute. In re Interest of Dustin S., 276 Neb. 635, 756 N.W.2d 277 (2008). The Nebraska Supreme Court has previously explained what happens when a juvenile court lacks jurisdiction in the context of an invalid adjudication. See In re Interest of D.M.B., 240 Neb. 349, 481 N.W.2d 905 (1992). In In re Interest of D.M.B., the Supreme Court explained that when a juvenile court does not have jurisdiction, it has "no power ... to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication-disposition hearing." 240 Neb. at 352, 481 N.W.2d at 909. Although the context of the instant case is different, the concept is the same. Where a juvenile court lacks jurisdiction, it lacks the power to require the parties to comply with its dispositional orders.
Although this premise has not previously been made explicit in the context of a juvenile court's terminating its jurisdiction, it has been applied implicitly. When this court and the Nebraska Supreme Court have reviewed juvenile courts' decisions whether to terminate jurisdiction, we have equated the termination of jurisdiction with the termination of court-ordered services and out-of-home placement. The most pertinent example is In re Interest of L.P. and R.P., 240 Neb. 112, 480 N.W.2d 421 (1992), where in reversing the juvenile court's decision to terminate jurisdiction over juveniles adjudicated to be within § 43-247(3)(a) (Reissue 1988), the Nebraska Supreme Court considered that the children would be returned to a potentially abusive parent if the juvenile court's jurisdiction were terminated. Additionally, in In re Interest of Emily C., 15 Neb.App. 847, 738 N.W.2d 858 (2007), this court affirmed the juvenile court's decision to retain jurisdiction over a juvenile adjudicated to be within § 43-247(3)(b) (Reissue 2004) for truancy because the juvenile continued to need an out-of-home placement to deal with truancy-related issues. Finally, in In re Interest of Vincent P., 15 Neb.App. 437, 445, 730 N.W.2d 403, 409 (2007), in affirming a county court's decision not to terminate jurisdiction over a juvenile adjudicated to be within § 43-247(3)(b) (Cum.Supp.2002) for sexually assaulting a child, we considered the fact that the juvenile "would benefit from continued therapy and supervision."
Therefore, it is clear that the termination of the county court's jurisdiction over Ethan's juvenile case will render the court powerless to enforce its dispositional orders, including the court's order placing Ethan with Theresa. Because the county court did not permanently modify custody, the placement will become ineffective once the order becomes final. The sole remaining order controlling child custody is the divorce decree, which places primary physical custody of Ethan with Daniel. From the face of the county court's order, it is clear that this is far from the court's intended result.
We conclude that the county court's final order was plainly erroneous. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Worth v. Kolbeck, 273 Neb. 163, 728 N.W.2d 282 (2007). The order's stated purpose is to place "care, custody[,] and control of Ethan ... with his mother, Theresa" as part of Ethan's permanency *775 plan. Instead, the outcome is that custody of Ethan will be placed with Daniel. We therefore reverse the county court's termination of its jurisdiction over Ethan's juvenile case and remand the cause for further dispositional proceedings consistent with this opinion.

CONCLUSION
Because the county court's final order has the opposite of its intended effect, it constitutes plain error. Because the juvenile court dismissed Ethan's juvenile case but did not enter any order having a permanent effect on Ethan's custody, the court lacks the power to enforce its placement of Ethan with Theresa. The only remaining effective order governing child custody is a divorce decree which places physical custody of Ethan with Daniel. This is not the placement intended by the county court. We therefore reverse the order entered by the county court dismissing Ethan's juvenile case and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.