## CONCLUSION

We find that after the Nebraska Supreme Court issued its mandate on the declaratory judgment action, there was no pending action in the district court which could be amended. The district court correctly concluded that it lacked jurisdiction, and it follows that this court also lacks jurisdiction on appeal.

APPEAL DISMISSED.

---

In re Interest of Ethan M., a child
under 18 years of age.
State of Nebraska, appellee, v.
Daniel M., appellant.

___ N.W.2d ___

Filed February 24, 2015.    No. A-14-358.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Jurisdiction.** Neb. Rev. Stat. § 43-247 (Supp. 2013) provides that the juvenile court's jurisdiction over any individual adjudged to be within the provisions of the juvenile code shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction.

3. **Juvenile Courts: Minors.** The purpose of the juvenile code is to assure the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship to protect the public interest.

4. ____: ____. The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of juveniles who fall within it.

5. ____: ____. The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction.

6. **Courts: Juvenile Courts: Jurisdiction: Minors.** Both a civil court and a juvenile court may be concerned on a primary basis with the welfare of the child, but, while their functions overlap, the basis of their jurisdiction and the scope of their powers differ.

7. **Juvenile Courts: Jurisdiction: Interventions: Parent and Child.** The juvenile court can appropriately intervene between the parents and the child only if the

child's condition requires the state to use its power to protect the welfare of the child.

Appeal from the Separate Juvenile Court of Lancaster County: TONI G. THORSON, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Ashley Bohnet, Deputy Lancaster County Attorney, and Jordan Talsma, Senior Certified Law Student, for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Daniel M. appeals an order of the separate juvenile court of Lancaster County, Nebraska, terminating its jurisdiction over Daniel's son, Ethan M. This case has previously been on appeal to this court on a number of occasions. See, *In re Interest of Ethan M.*, 15 Neb. App. 148, 723 N.W.2d 363 (2006) (*Ethan M. I*); *In re Interest of Ethan M.*, 18 Neb. App. 63, 774 N.W.2d 766 (2009) (*Ethan M. II*); *In re Interest of Ethan M.*, 19 Neb. App. 259, 809 N.W.2d 804 (2011) (*Ethan M. III*); *In re Interest of Ethan M.*, No. A-13-058, 2013 WL 4036465 (Neb. App. Aug. 6, 2013) (selected for posting to court Web site) (*Ethan M. IV*).

In the present appeal, Daniel has assigned numerous errors, including the juvenile court's finding that jurisdiction should be terminated. Because we find no error with the court's termination of its jurisdiction, we affirm.

## II. BACKGROUND

This case has appeared before this court on at least six prior occasions, resulting in three prior published opinions, as noted above. In *Ethan M. III*, 19 Neb. App. at 260-61, 809 N.W.2d at 806-07, this court recounted the prior history, including the results of the first two published opinions:

> Ethan . . . , born in January 2000, is the child of Daniel and Theresa S. Following the dissolution of Daniel and

Theresa's marriage in 2002, a California court awarded Daniel custody of Ethan. In January 2005, [the Department of Health and Human Services (DHHS)] removed Ethan from Daniel's home in Nebraska and placed him into foster care. The county court for Sherman County, Nebraska, subsequently adjudicated Ethan as a result of allegations that other children residing within the home had suffered injuries. In January 2006, the court approved an immediate change of Ethan's placement from the home of his paternal grandparents to the home of [his biological mother] Theresa in California. Daniel appealed, and in [*Ethan M. I*], we found that the State must make reasonable efforts to reunify Ethan and Daniel. We recognized that under the California divorce decree, Daniel was Ethan's custodial parent. We concluded that Ethan should not be placed in California with Theresa and that he should be placed in a situation in Nebraska that was conducive to reunification with Daniel. We observed that Daniel had complied with all tasks required by the case plan.

DHHS did not return Ethan's custody to Daniel. Rather, Ethan's physical custody remained with Theresa, who moved to Nebraska. In June 2007, Daniel began having weekly supervised visitation with Ethan. But in August, the visitation was changed to therapeutic visitation supervised by a mental health professional. In September, visitation ceased due to the unavailability of a mental health professional to supervise the visitation. DHHS arranged for telephone calls between Ethan and Daniel on Tuesdays and Thursdays, but Ethan often ended the calls quickly or refused to speak [to Daniel]. In February 2009, the county court for Sherman County adopted DHHS' case plan which continued telephonic visitation only, found that reasonable efforts to reunify Ethan and Daniel were not necessary, placed custody of Ethan with Theresa, and dismissed the juvenile case. Upon Daniel's appeal, we found plain error in the court's order. In [*Ethan M. II*, 18 Neb. App. at 72, 774 N.W.2d at 773], we held that "where the only issue placed in front of the

county court is whether a case plan is in the child's best interests, permanent child custody cannot be modified merely through the adoption of the case plan." We stated, however, that "a case plan could be used to place a child with a noncustodial parent as a dispositional order under the continuing supervision of the juvenile court." *Id*. We reversed the county court's order and remanded the cause for further proceedings.

In *Ethan M. IV*, we recounted the history of the case following *Ethan M. II*. We noted that a series of review hearings were held in 2010 and that the court had entered an order of review which approved a Department of Health and Human Services (DHHS) case plan containing no rehabilitative goals or tasks for Daniel. We noted that the court had continued legal custody with DHHS and physical custody with Theresa S., had found that reasonable efforts had been made to prevent or eliminate the need for removal of Ethan from his home, and had ordered that the primary permanency plan was family preservation with an alternative plan of reunification.

In *Ethan M. III*, we observed that the order at issue was no longer one finding that reasonable efforts were excused, but was one finding that reasonable efforts had been made to prevent or eliminate the need for Ethan's removal from his home. We noted, however, that Ethan had been removed from *Daniel's* home and not *Theresa's* home and that the adopted case plan had no goals or services related to correcting, eliminating, or ameliorating the situation that led to *that* removal and, instead, had essentially attempted to redefine Ethan's home as Theresa's home, even though he had been removed from Daniel's home. We concluded that DHHS needed to immediately obtain updated assessments and devise rehabilitative goals to facilitate a future reunification between Ethan and Daniel.

Subsequent to our opinion in *Ethan M. III*, the court ordered evaluations to assess Ethan's best interests and the possibility of reunification with Daniel. See *Ethan M. IV*. The court also ordered DHHS to devise rehabilitative goals to facilitate a future reunification, bearing in mind Ethan's best interests. *Id*.

In December 2012, the juvenile court entered an order finding that legal custody should remain with DHHS, that Ethan's needs were being met, that services were being provided in compliance with a case plan, and that reasonable efforts had been made to prevent or eliminate the need for removing Ethan from his home. *Ethan M. IV*. The court noted that, at that time, there was evidence that beginning visitation between Ethan and Daniel would be harmful to Ethan and that Ethan did not desire a relationship with Daniel and was anxious and fearful of him. *Id*.

On appeal in *Ethan M. IV*, we ultimately concluded that we lacked jurisdiction because Daniel was not appealing from a final order. The denial of Daniel's motions for visitation and for immediate placement did not affect substantial rights and were not final and appealable, and there had not been such changes in the permanency plans to create a final and appealable order. As such, we dismissed for lack of jurisdiction. *Id*.

Since our decision in August 2013 in *Ethan M. IV*, additional review hearings were held and additional services were provided to Ethan and Daniel.

In September 2013, the juvenile court conducted a review hearing, during which it also heard a motion filed by the guardian ad litem requesting a court order permitting therapeutic visitation between Ethan and Daniel. The licensed social worker and mental health practitioner who had been working with Ethan testified that he had seen Ethan every 2 to 3 weeks since September 2012 and that he had met with Daniel in October 2012 and again in February 2013.

He testified that he would recommend starting therapeutic visitation between Ethan and Daniel. He testified that Ethan had sometimes expressed an interest in seeing Daniel, but that Ethan had vacillated between wanting to see Daniel and not wanting to see Daniel. He testified that he believed Ethan was using his expressions of wanting to see Daniel as a form of manipulation of Theresa, who was guarded about potential negative impacts that might arise from therapeutic visitation between Ethan and Daniel. He also testified that it would be unwise to force Ethan to attend visitation with Daniel and

that the focus for Ethan's well-being needed to be on establishing permanence.

On cross-examination, the social worker acknowledged that Ethan had been given numerous opportunities to engage with Daniel and had not wanted to, that Ethan wanted to "move on," and that Ethan really only wanted to express his anger to Daniel and that doing so "may mean that is the last time [Ethan] ever sees [Daniel]." He also testified that Ethan was in a safe and stable environment with Theresa. During questioning from the court, the social worker testified that Ethan has no desire to have a relationship with Daniel and that the social worker had pushed Ethan to have a conversation with Daniel to express his feelings.

At the conclusion of that hearing, the court adopted the DHHS plan and authorized therapeutic visitation, to be established consistent with Ethan's best interests. The adopted plan provided for Ethan to remain placed in Theresa's home, and the plan indicated that such placement was the least restrictive alternative and was in Ethan's best interests. The plan provided a primary permanency plan of family preservation by February 2014. The court ordered DHHS to assist Daniel with any necessary transportation to participate in such visitation.

In late December 2013, another review hearing was held. The record indicates that, in addition to reviewing the progress of the juvenile case, the juvenile court was simultaneously hearing a custody case concerning the parties. The court noted that in a separate civil case, temporary custody of Ethan had been placed with Theresa, apparently modifying the custody previously awarded to Daniel in the parties' divorce.

During the review hearing, the DHHS caseworker testified that DHHS was recommending case closure, was not continuing to try to force Ethan to have contact with Daniel, and was allowing Ethan to achieve permanency in the safe and stable home environment in which he was then living, with Theresa. The caseworker testified that continued contact between Ethan and Daniel was not in Ethan's best interests.

Daniel testified that three different therapeutic visits had been scheduled and that he had traveled to Lincoln, Nebraska,

each time to attempt to participate. He testified that when he arrived at the social worker's office for the first scheduled therapeutic visit, the social worker had been informed "just prior to the visit, that Ethan would not be attending." Telephone contact was attempted, and "the phone was just hung up" twice before Ethan briefly spoke with Daniel.

Daniel testified that when he arrived at the social worker's office for the second visit, he was informed that Ethan would again not be attending. Ethan was called again and told Daniel that "he didn't feel like talking." According to Daniel, that was the end of that call.

Daniel testified that when he arrived at the social worker's office for the third visit, Ethan was again not going to be physically present. Another short telephone conversation occurred.

Daniel also testified that he had sent three letters to Ethan, but that he received "[n]othing at all" back from Ethan in response to any of the letters.

In April 2014, the juvenile court entered an order terminating its jurisdiction over Ethan. The court noted that Ethan was then 13 years old and that he had been living in Theresa's care since January 2006. The court noted that a permanency plan of family preservation with Theresa had been approved at least since 2009.

The court noted the efforts DHHS had made to establish a relationship between Ethan and Daniel. DHHS had changed Ethan's therapist to provide "'fresh eyes'" on the situation and had provided Ethan with individual therapy with a therapist to work on the relationship with Daniel. Ethan and Theresa had cooperated with the therapy. The therapist had attempted to facilitate telephone contact and therapeutic visitations between Ethan and Daniel. DHHS had also provided team meetings to facilitate case goals. DHHS had also assisted Daniel with transportation and had provided him an opportunity to write letters to Ethan.

Despite those efforts, Ethan, now a teenager, has refused to cooperate and has refused to attend visitation with Daniel. According to the court, Ethan has "clearly indicated he will not participate in visits and does not intend to talk with his father[, Daniel]." As noted, Ethan did not agree to attend any

of the scheduled therapeutic visits and was willing to speak only briefly with Daniel on the telephone. The court also noted that Ethan has held this position concerning Daniel for years.

The court held that forcing Ethan to have contact with Daniel was not in Ethan's best interests. The court noted that Ethan is in a safe and stable placement with his biological mother, Theresa, and is doing well in that placement. The court also recognized the pending custody case, in which temporary custody of Ethan had been placed with Theresa. As such, the court concluded that the juvenile court jurisdiction should terminate and that there are no other reasonable efforts that can be made to justify continuing the juvenile case. Daniel now appeals.

## III. ASSIGNMENTS OF ERROR

Daniel has assigned a number of errors on appeal, including that the juvenile court erred in terminating jurisdiction. Because we conclude below that the court did not err in terminating jurisdiction, we need not more fully discuss Daniel's other assignments of error.

## IV. ANALYSIS

This case presents the court with a situation where the juvenile court has exercised jurisdiction for approximately 9 years; has approved various case plans that have provided therapy and stability for Ethan, who is now a teenager; and has attempted to incorporate attempts to restore a relationship between Daniel and Ethan. Throughout that time, Ethan has largely expressed a refusal to develop such a relationship with Daniel and has refused to attend offered visitation. A separate custody proceeding has been instituted involving Ethan, Daniel, and Theresa. The evidence adduced supports the juvenile court's conclusion that there are no further reasonable efforts available to the juvenile court justifying continuing jurisdiction, and we affirm.

[1] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's

findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Zoey S.*, 22 Neb. App. 371, 853 N.W.2d 225 (2014).

[2-5] Neb. Rev. Stat. § 43-247 (Supp. 2013) provides that the juvenile court's jurisdiction over any individual adjudged to be within the provisions of the juvenile code shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction. The purpose of the juvenile code is to assure the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship to protect the public interest. Neb. Rev. Stat. § 43-246(1) (Cum. Supp. 2014); *In re Interest of Vincent P.*, 15 Neb. App. 437, 730 N.W.2d 403 (2007). The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of juveniles who fall within it. *In re Interest of Vincent P., supra.* The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction. *Id.*

[6,7] The Nebraska Supreme Court has recognized that both a civil court and a juvenile court may be concerned on a primary basis with the welfare of the child, but, while their functions overlap, the basis of their jurisdiction and the scope of their powers differ. See *In re Interest of Goldfaden*, 208 Neb. 93, 302 N.W.2d 368 (1981). The Supreme Court has held that the juvenile court can appropriately intervene between the parents and the child only if the child's condition requires the state to use its power to protect the welfare of the child. See *id.*

The chronology of this case, our prior opinions in this case, and evidence adduced at the latest review hearing demonstrate that Ethan's condition no longer requires the intervention of the juvenile court and, conversely, do not demonstrate that there are additional efforts available to the juvenile court which will reasonably serve Ethan's best interests or that Ethan's best interests require continued intervention of the juvenile court.

We found in *Ethan M. I* that the State needed to make reasonable efforts to reunify Ethan and Daniel and that Ethan should not be placed with his biological mother, Theresa, in California, because a placement in Nebraska would be more conducive to fostering a relationship between Ethan and Daniel. Following our decision, Theresa moved to Nebraska and Ethan continued to be placed with her. Weekly supervised visitation was commenced, and eventually, DHHS arranged for regular telephone visitation between Ethan and Daniel. Ethan often ended these calls quickly or refused to speak to Daniel.

We found in *Ethan M. II* that it was inappropriate for the juvenile court to permanently modify child custody through the adoption of a case plan, and we found in *Ethan M. III* that DHHS needed to obtain updated assessments and devise rehabilitative goals to facilitate a potential reunification between Ethan and Daniel. This was done, and we recognized in *Ethan M. IV* that the juvenile court ordered updated evaluations and ordered DHHS to devise rehabilitative goals to facilitate reunification, bearing in mind Ethan's best interests.

Evidence presented to the juvenile court in the trial proceedings of *Ethan M. IV* demonstrated that Ethan's needs were being met in his placement with Theresa and that beginning visitation between Ethan and Daniel would be harmful to Ethan. Evidence also demonstrated that Ethan, then 12 years of age, did not desire a relationship with Daniel and was anxious and fearful of him.

Now, subsequent to our decision in *Ethan M. IV*, additional review hearings have been held and additional evidence has been adduced to the juvenile court. Based on the recommendation of a licensed social worker and mental health practitioner who had been seeing Ethan on a regular basis, the juvenile court adopted a case plan that included authorization of therapeutic visitation between Ethan and Daniel. Three such visits were scheduled, but none of them were successfully completed. On each occasion, Ethan refused to attend. Telephone contact was attempted, with limited success. In addition, Daniel's attempts to engage Ethan in a relationship through written correspondence resulted in Ethan's not responding "at all."

Evidence was adduced to the juvenile court supporting a conclusion that forcing Ethan to attend visitation or have a relationship with Daniel would be contrary to Ethan's best interests. Ethan has been given numerous opportunities throughout the history of this case to engage with Daniel, has repeatedly expressed that he does not desire to do so, and has refused to engage in a relationship with Daniel.

The record presented to us demonstrates that a separate civil case is pending in which custody of Ethan is being litigated between Daniel and Theresa. The record suggests that, in the civil case, temporary custody of Ethan has been placed with Theresa, apparently modifying a prior dissolution decree's award of custody to Daniel. The evidence adduced to the juvenile court has consistently demonstrated that Ethan is in a safe and stable placement with Theresa and is doing well in that placement.

We find that the record fully supports the juvenile court's conclusion that further attempting to force Ethan to have contact with Daniel is not in Ethan's best interests. The record also supports the court's conclusion that there has not been a showing that any additional reasonable efforts are available to justify continuing the juvenile case. The record supports the court's conclusion that the pending custody case is an appropriate forum for resolving any custody issues between the parties. As such, we affirm the juvenile court's termination of jurisdiction in this case.

## V. CONCLUSION

We find no error in the juvenile court's termination of jurisdiction. We affirm.

AFFIRMED.