252 N.W.2d 224 (1977)
In the Matter of the Dependency and Neglect of S. J. Z., a child, and concerning J. L., et al.
No. 11846.
Supreme Court of South Dakota.
April 7, 1977.
*225 Allen G. Wilson, Hot Springs, for appellants, Mother and Stepfather of S.J.Z.
Janice C. Godtland, Asst. Atty. Gen., Pierre, for respondent; William J. Janklow, Atty. Gen., Pierre, on brief.
ZASTROW, Justice.
This is an appeal from an adjudicatory order and a dispositional order declaring S.J.Z. to be a dependent and neglected child. The dispositional order terminated the parental rights of the appellants, S.J. Z.'s mother and stepfather, and placed S.J.Z. with the Division of Social Welfare for the purpose of adoption. We affirm.
Appellant, who was apparently unmarried at the time, gave birth January 6, 1975, to S.J.Z. The birth was uncomplicated. As part of the standard post-natal care, appellant brought S.J.Z. to the hospital for her one-month checkup. At that time, Dr. R. S. Forshner, a practitioner for twenty-two years, noticed two bruise marks on S.J.Z.'s upper left abdomen. Each was two or three centimeters long. The appellant was unable to explain how S.J.Z. received the bruises when queried by Dr. Forshner.
On April 22, 1975, when S.J.Z. was three and one-half months old, the appellant took S.J.Z. to the hospital at 8:45 p. m., to treat her swollen right upper leg. The appellant advised the doctor that the baby had been "fussy" since the day before. Dr. Forshner examined S.J.Z. and saw that the leg was "grossly swollen, red and inflamed." Dr. Forshner asked appellant what had happened to the baby. Appellant responded that she did not know. Because Dr. Forshner suspected a fracture to the child's leg, she was admitted.
The next morning the leg was x-rayed and a fragmented fracture of the midshaft of the right femur was found. S.J.Z. was then placed in traction. After three or four days, a total bone scan was ordered because of the unusual fracture. However, it was delayed until May 16th when S.J.Z. was taken out of traction. The bone scan disclosed a fracture of the bones of the right forearm which had not been suspected previously. The radius was broken through and the ulna had a greenstick fracture. These fractures of the forearm appeared to be in a more advanced stage of healing than the leg fracture. Upon discovering this older break, Dr. Forshner contacted the authorities on a suspected case of a battered child.
An investigation was ordered to determine whether this child was abused. After the investigation was completed, a petition was filed June 3, 1975, to declare S.J.Z. to *226 be a neglected child. The adjudicatory hearing was held June 24, 1975. At the hearing, Dr. Forshner testified as to his medical examination and care for S.J.Z. Dr. Forshner also testified that in his twenty-two years of practice and treatment of thousands of babies, he had never seen a fracture of the femur in a baby three-months old. He stated that children at S.J.Z.'s age have bones which are rather soft and pliable and will not fracture very easily. When asked if the child's bones were normal, Dr. Forshner said that tests were run to determine the quality of her bones, and they were found to be normal.
The appellant testified at the adjudicatory hearing that she was married May 1, 1975. Previously, she had been living with her husband's parents and was doing so when the child was injured. The appellant testified that she loved her daughter and did not know how she was injured. She thought she could have broken her leg in the rungs of her crib by kicking. However, no explanation was given as to how the child's arm may have been broken. On cross-examination, the appellant stated that S.J.Z. could not crawl, stand up in the crib by herself or turn over by herself. When asked if she spanked the child, she said, "Well hardly," then, "No, I don't," "No, I don't do it at all."
On appeal, appellant questions (1) the sufficiency of the evidence to support the trial court's conclusion that S.J.Z. was a neglected or dependent child and (2) whether the trial court abused its discretion when it ordered termination of the appellants' parental rights.
As stated in People in Interest of D.K., 1976, S.D., 245 N.W.2d 644, at 649:
"A finding that a child is neglected or dependent comes after an adjudicatory hearing to determine if the allegations in the petition are supported by a preponderance of the evidence. SDCL 26-8-1(1); SDCL 26-8-22.10; In re P.L.H., 1972, 86 S.D. 564, 199 N.W.2d 587. Our duty on review is to uphold the trial court's decision unless the findings of fact are `clearly erroneous.' In the Matter of the Neglect and Dependency of D.T., 1975, S.D., 237 N.W.2d 166; In re Estate of Hobelsberger, 1970, 85 S.D. 282, 181 N.W.2d 455. One manner used to determine whether clear error has been committed is to determine if the findings are contrary to the clear preponderance of the evidence. Jones v. South Dakota Children's Home Society, Sioux Falls, 1976, S.D., 238 N.W.2d 677; Ford v. Hochstetter, 1970, 85 S.D. 4, 176 N.W.2d 501."
The evidence adduced at trial supports the trial court's determination.[1] There was sufficient circumstantial evidence displayed before the court for it to conclude the child's injuries could have occurred only from abuse or neglect.[2] To require proof of the striking blow would place an onerous burden upon the state and would ignore the competing interests of the child. People in Interest of D.K., supra.
As to whether the trial court abused its discretion, appellants have failed to establish by clear evidence that an abuse was committed. State v. Prosser, 1959, 78 S.D. 35, 98 N.W.2d 329, and Howells v. Howells, *227 1962, 79 S.D. 480, 113 N.W.2d 533. There is nothing evident in the record or appellants' brief to color the trial court's determination as other than proper. The fact that the court did not follow appellants' wishes cannot be considered an abuse of discretion. In fact, the social service reports recommended termination of parental rights if the court found child abuse was present. Since the court found abuse was present, its determination was in accordance with the report.[3]
The appellants have in their brief discussed various matters thought to constitute reversible error. However, there were no objections offered at trial to those matters and they were not assigned as error. As such, they are not reviewable.
Affirmed.
All the Justices concur.
NOTES
[1] There were no findings of fact entered for the order of adjudication. Applying SDCL 15-6-52(a) and In Matter of A.P., 1976, S.D., 248 N.W.2d 878, we conclude that the findings of fact should be entered after the adjudicatory hearing. However, in this proceeding the appellants' proposed findings of fact and the court's findings of fact for the dispositional hearing sufficiently covered the facts adduced at the adjudicatory hearing. Hereafter, we will require separate findings of fact and conclusions of law to be entered after the adjudicatory hearing and the dispositional hearing.
[2] The respondent would have us apply res ipsa loquitur to cases of suspected child abuse where there is no satisfactory explanation given by the parents as to the cause of the child's injuries. This rule has been established by In the Matter of S., 1965, 46 Misc.2d 161, 259 N.Y.S.2d 164, and considered in Higgins v. Dallas Cty. Child Welfare Unit, 1976, Tex.Civ. App., 544 S.W.2d 745. Like Higgins, we agree that circumstantial evidence may be sufficient to establish child abuse or child neglect, but we find it unnecessary to adopt the doctrine of res ipsa loquitur and the implications of the doctrine at this time.
[3] The report on the psychological evaluation disclosed "neither individual's performance was indicative of extreme maladjustment * * [t]he only discrepant score was a lower capacity to control and express frustative tensions in a suitably realistic way, which was reflected in [S.J.Z.'s mother's] responses."