IN RE INTEREST OF MCCAULEY H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. JOELLEN R., APPELLANT.
529 N.W.2d 77

Filed February 21, 1995.    No. A-94-700.

William G. Line, of Kerrigan & Line, for appellant.

Dean Skokan, Dodge County Attorney, and Sandra Silva for appellee.

IRWIN and MILLER-LERMAN, Judges, and NORTON, District Judge, Retired.

MILLER-LERMAN, Judge.

JoEllen R., the natural mother of the juvenile, McCauley H., appeals the decision of the juvenile court for Dodge County adjudicating McCauley a juvenile as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). For the reasons recited below, we affirm.

## PROCEDURAL HISTORY

The procedural history of this case shows the following: A petition was filed on December 1, 1993, alleging that McCauley was a juvenile under § 43-247(3)(a). An amended petition dated December 8 alleged that McCauley was a child under § 43-247(3)(a) in that

1. McCauley S. [H.] is a child who, is in a situation dangerous to life or limb or injurious to the health or morals of such juvenile, to wit: on or about November 15, 1993, said child was subjected to physical abuse.

2. McCauley S. [H.] is under the age of eighteen years

of age, having been born March 14, 1992 and resides at [address given].

Although the natural father was identified in the amended petition, he did not participate in the proceedings which are the subject of this appeal.

A temporary order was entered on December 10, placing McCauley with the Department of Social Services. An adjudication hearing was conducted on February 2 and 16, 1994. On February 17, the county court sitting as a juvenile court adjudicated McCauley to be a juvenile as defined in § 43-247(3)(a). The court found by a preponderance of the evidence that the multiple bruises sustained by McCauley were consistent with a finding that the child had been subjected to physical abuse, although the evidence was inconclusive as to who inflicted the bruises. The court also found that the bruises on the child were inconsistent with being caused accidentally or incidental to the child's own behavior. The court adjudicated McCauley as a child "who is in a situation dangerous to life or limb, or injurious to his health, in that on or about November 15, 1993, said child was subjected to physical abuse." In making these findings and conclusions, the trial court noted that "[n]umerous witnesses testified as to possible causes for the bruises, as well as the character and veracity of the child's primary caretakers."

The mother appealed the adjudication order to the district court, which affirmed the order. This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, the mother claims that the evidence was insufficient to establish that McCauley was a child under § 43-247(3)(a) and that she was prejudiced by the exclusion of certain evidence at the adjudication hearing.

## FACTS

The record shows that on the afternoon of November 25, 1993, Officer Dwight Murphy of the Fremont Police Department was dispatched to the residence of McCauley's paternal grandmother. She called the police upon discovering that McCauley had bruises over his face, back, and rib area. McCauley was subsequently taken into protective custody.

On November 29, 1993, Dr. Cynthia Wengel, a board-certified pediatrician, examined the child and concluded that McCauley had been intentionally injured on multiple occasions. Dr. Wengel concluded that the bruises over McCauley's entire body were received on various occasions within the last 5 to 14 days. At the adjudication hearing, she opined that the bruises were not accidentally acquired because of their bilateral placement, because of their location, and because children 18 months old do not usually fall backward. Dr. Wengel further opined that McCauley's behavior was subdued and fearful and was consistent with abuse. It was Dr. Wengel's opinion that McCauley had been intentionally physically abused.

Dr. Monty Sellon, the child's primary care physician, was called as a witness by the mother at the adjudication hearing. Dr. Sellon stated that McCauley had received well-baby care, but that in his records, Dr. Sellon had noted concern of possible child abuse. Dr. Sellon also observed the extensive bruises depicted in photographs in evidence.

The record shows that from the date he was born, March 14, 1992, until November 25, 1993, McCauley had been in the care and custody of his mother. The mother shared her home with her boyfriend and allowed him to babysit McCauley on occasion. The boyfriend's criminal history and drug and alcohol abuse problems were testified to at the adjudication hearing.

Neither the mother nor her boyfriend could explain how a child in their custody and control could become so bruised. The mother testified that she did not see the bruises. Alternatively, she claimed that McCauley may have received the multiple bruises as depicted in the photographs in evidence from playing or falling, or from roughhousing with other little boys. The boyfriend denied abusing McCauley.

The boyfriend's former wife was called as a witness by the mother. She stated that her ex-husband had a good relationship with the children of their marriage and was not known to abuse them.

The paternal grandmother testified that November 25, 1993, was not the first time she had seen her grandson with bruises.

She stated that she had also observed bruises on McCauley's body on October 18, 1993, at which time the boyfriend was living with the mother. The record shows that McCauley's bruises ceased to exist once he was taken from the care of his mother on November 25.

During the mother's testimony at the adjudication hearing, her trial counsel identified and offered a December 11, 1993, letter written to the mother by her former counsel to the effect that after speaking with the county attorney's office, it appeared to counsel that the case specifically against the mother was not as strong as the State had originally suggested. The essence of the letter was that the county attorney thought that the mother was protecting her boyfriend by refusing to implicate him as being responsible for McCauley's injuries. The letter recites that the county attorney had stated the foregoing and more to the former counsel. The mother's trial attorney offered to call the first counsel as a witness as an alternative to receipt of the letter in evidence. The State objected to the receipt of the letter or comparable live testimony on the bases of hearsay and relevance. The trial court sustained the objection.

The record from the adjudication hearing consumes about 150 pages of testimony by 10 live witnesses and numerous exhibits, including photographs of McCauley which graphically depicted injuries over a substantial portion of his body. Following the adjudication hearing, the trial court found McCauley to be a juvenile as defined in § 43-247(3)(a). The adjudication order was affirmed by the district court, and this appeal followed.

## ANALYSIS

*Sufficiency of Evidence.*

The mother argues that the evidence was insufficient to establish jurisdiction over McCauley under § 43-247(3)(a). She claims specifically that the evidence did not establish directly who inflicted the bruises on McCauley. The State responds that the preponderance of the evidence shows that the bruises sustained by McCauley were not normal or accidental but intentional, and in any event, the child was shown to be in a situation injurious to his health as defined in § 43-247(3)(a). We

agree with the State.

We review this appeal de novo, recognizing that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of L.P. and R.P.*, 240 Neb. 112, 480 N.W.2d 421 (1992); *In re Interest of J.L.H., J.L.H., and R.H.*, 2 Neb. App. 40, 507 N.W.2d 641 (1993).

The relevant portion of § 43-247 applicable to this case provides as follows: "The juvenile court in each county as herein provided shall have jurisdiction of: . . . (3) Any juvenile (a) who is . . . in a situation . . . dangerous to life or limb or injurious to the health or morals of such juvenile . . . ." The quantitative proof required for an adjudication based on § 43-247(3)(a) is "preponderance of the evidence" and, therefore, is analogous to the standard of proof generally applicable in civil cases. *In re Interest of D.A.*, 239 Neb. 264, 475 N.W.2d 511 (1991); *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). See, also, Neb. Rev. Stat. § 43-279.01(3) (Reissue 1993).

It has been held that "the Nebraska Juvenile Code must be liberally construed to accomplish its purposes serving the best interests of juveniles within the act." *In re Interest of L.D. et al.*, 224 Neb. at 257, 398 N.W.2d at 97. It has also been observed that "[t]he right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child." *In re Interest of C.P.*, 235 Neb. 276, 284, 455 N.W.2d 138, 144 (1990).

We have reviewed the record in this case de novo, as we are required to do. *In re Interest of L.P. and R.P., supra; In re Interest of J.L.H., J.L.H., and R.H., supra.* The direct evidence amply establishes that given their placement, configuration, and aging, McCauley's extensive bruises were consistent with the conclusions that McCauley had been abused and was in a situation dangerous to life or limb, rather than the conclusion that the bruises had occurred normally or had been caused by accident. The direct evidence is undisputed that McCauley's injuries occurred while the child was in his mother's custody. Although the injuries occurred on her watch, the mother argues that the evidence is merely circumstantial as to

who inflicted the bruises and that, therefore, the State's proofs failed to establish jurisdiction by a preponderance of the evidence.

Numerous jurisdictions which have considered the question of sufficiency of circumstantial evidence in connection with juvenile proceedings involving issues of child neglect or child abuse have adopted the position that a finding of abuse or neglect may be supported where the record shows (1) a parent's control over the child during the period when the abuse or neglect occurred and (2) multiple injuries or other serious impairment of health have occurred which ordinarily would not occur in the absence of abuse or neglect. See *Higgins v. Dallas Cty. Child Welfare Unit*, 544 S.W.2d 745 (Tex. Civ. App. 1976), *overruled on other grounds, In re Interest of S.H.A.*, 728 S.W.2d 73 (Tex. App. 1987). We adopt the foregoing proposition in the instant case. See, also, *Matter of S.J.Z.*, 252 N.W.2d 224 (S.D. 1977) (holding that circumstantial evidence may be sufficient to establish child abuse or neglect, because requiring proof of the striking blow would place an onerous burden upon the State and would ignore the competing interests of the child); *In the Matter of S.*, 46 Misc. 2d 161, 259 N.Y.S.2d 164 (1965) (holding that res ipsa loquitur applies to a battered child proceeding permitting an inference of neglect to be drawn from proof of the child's age and condition, and that the latter is such as in the ordinary course of things does not happen if a parent who has the responsibility and control of an infant is protective and nonabusive). We are aware that in Nebraska, circumstantial evidence of intent may be used to establish abandonment as a basis for terminating parental rights. *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). We are also aware that the application of res ipsa loquitur to child abuse and child neglect cases has been adopted by statute in some jurisdictions. See, e.g., N.Y. Fam. Ct. Act § 1046(a)(ii) (McKinney 1983); Conn. Gen. Stat. Ann. § 17a-101(f)(4) (West 1992); R.I. Gen. Laws § 40-11-7.1 (1990).

In endorsing the use of circumstantial evidence to establish child neglect or child abuse, it has been stated that "[l]earned commentators have pointed out that in many such cases the

only proof available is circumstantial evidence since abusive actions usually occur within the privacy of the home, the child is either intimidated or too young to testify, and the parents tend to protect each other." *Higgins*, 544 S.W.2d at 750. See, also, Rowine H. Brown et al., *Medical and Legal Aspects of the Battered Child Syndrome*, 50 Chi.-Kent L. Rev. 45 (1973).

We have reviewed the record de novo and conclude that the preponderance of evidence shows that McCauley was a juvenile as defined under § 43-247(3)(a).

*Exclusion of Letter Written by Former Counsel.*

The mother claims on appeal that the exclusion of the December 11, 1993, letter to her from her former counsel, or comparable oral testimony, was improperly excluded and that she was prejudiced thereby. Her arguments are of a conspiratorial nature, generally to the effect that the instant case was pursued by the State as leverage to force her to implicate her boyfriend, apparently as a basis for a possible separate action against him. The mother claims that the letter would have demonstrated the weakness of the State's case in the current proceeding. The State responds that the letter is inadmissible as hearsay within hearsay, and, in any event, is irrelevant and was properly excluded. We agree that the letter was properly excluded.

Under Nebraska jurisprudence, the strict rules of evidence do not apply to temporary juvenile proceedings, to dispositional hearings, or to proceedings to terminate parental rights. See, *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991) (detention hearing and dispositional hearing); *In re Interest of A.H.*, 237 Neb. 797, 467 N.W.2d 682 (1991) (termination hearing); *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) (termination hearing). However, the Nebraska Supreme Court has held that the Nebraska Evidence Rules do "control adduction of evidence at an adjudication hearing under the Nebraska Juvenile Code." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. at 262, 417 N.W.2d at 155. See, also, *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990).

It has been held that in all proceedings where the

Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994). Although the State claims that the letter was properly excluded as hearsay, we need not decide this argument because we conclude the letter was properly excluded as irrelevant. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (holding that an appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it).

Under Neb. Evid. R. 401, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is probative if it tends in any degree to alter the probability of a material fact. *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (1990); *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

It has been held:

There are two components to relevant evidence: " '[M]ateriality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is "in issue," that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .

" 'The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . .' "

*State v. Bell*, 242 Neb. 138, 141, 493 N.W.2d 339, 343 (1992), quoting *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808

(1990). See, also, *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994).

The "fact that is of consequence," within the meaning of Neb. Evid. R. 401, in the instant case is whether or not McCauley was a juvenile under § 43-247(3)(a) because he was or was not in a situation dangerous to life or limb or injurious to his health. The letter proffered by the mother was not material to the issue of McCauley's situation and was, therefore, not relevant. At best, the letter pertained to the county attorney's view of the strength of the State's case. The county attorney's pretrial view of the case is not probative of any material fact in the case as presented at trial and before us upon review. Based on the foregoing, we conclude that the letter and comparable testimony were properly excluded as not relevant.

AFFIRMED.