**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 3, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In Re: A.C. and C.K., Jr.

No. 13-0882 (Webster County 13-JA-29 & 13-JA-30)

**MEMORANDUM DECISION**

The petitioner mother, by counsel Christopher G. Moffatt, appeals the Circuit Court of Webster County's June 19, 2013, order adjudicating her as an abusive and neglectful parent and its July 29, 2013, order terminating her parental rights to her two children at issue in this matter. The guardian ad litem for the children, Michael W. Asbury, Jr., has filed a response in support of the circuit court's order, as does the Department of Health and Human Resources ("DHHR"), by its attorney, William P. Jones. The petitioner mother argues that the circuit court erred by finding that she had abused and neglected her children based upon her alleged knowledge of her husband's marijuana cultivation in and around the family home. She further argues that the circuit court committed reversible error when it made several allegedly erroneous factual findings.

Upon consideration of the standard of review, the parties' briefs, oral argument and the record presented, this Court finds no new or significant questions of law have been presented. This Court further finds that the circuit court committed no error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The petitioner is the natural mother of A.C.,[1] who is thirteen years old,[2] and C.K., Jr., who is nine years old. C.K., Jr.'s natural father, C.K., Sr., is married to the petitioner. The family resided in a single-wide trailer to which a camper had been attached.

The petitioner and her husband have been adjudicated as abusive and neglectful

---

[1]We use initials to identify the minor children in this case, following our practice of protecting the identity of juveniles in sensitive cases. *See, e.g., State ex rel. WV Dept. Of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); *see also* W.Va. R. App. P. 40(e)(1).

[2]The parents rights of A.C's natural father, T.W., were terminated in March of 2011.

1

parents on two prior occasions. In 2007, they were found to have abused and neglected A.C. by not obtaining necessary mental health counseling for the child.[3] In 2011, the petitioner and her husband were again adjudicated as having abused and neglected the children: the petitioner's husband was adjudicated on the basis of his marijuana cultivation in the family home and his addiction to controlled substances, whereas the petitioner was adjudicated for knowingly allowing the marijuana cultivation to occur in the family home. After each of these adjudications, the parents were placed on improvement plans and ultimately reunited with the children. In April 2011, the petitioner was convicted of felony conspiracy to manufacture a controlled substance along with her husband. Both were granted an alternative sentence of home incarceration, and they were released on eighteen months of parole in June of 2012.

In April 2013, the police obtained a warrant to search the family home after the petitioner's husband made several threatening statements about law enforcement officials on the message board of the website "Topix."[4] Upon searching the residence, the officers found marijuana in a dresser drawer in the camper attached to the home; marijuana seeds in a pill bottle bearing the petitioner's name in the family's refrigerator; and a lamp used for growing plants indoors. Approximately one hundred twenty yards behind the family home, the police found five, three-foot tall marijuana plants.

The petitioner's husband claimed that all the marijuana-related items belonged to him and that he used marijuana for "medicinal" purposes. The petitioner claimed that she had no knowledge of any of these items or of her husband's continued cultivation of marijuana. The petitioner testified that she was confined to the family home a majority of the time, as she had a medical condition which required her to stay out of the sun. She testified that she had full access to the entire trailer and that she had to enter the camper, where much of the evidence was found, to do laundry. The petitioner also testified that she prepared the meals in the home and used the refrigerator where the seeds were found in a bottle bearing her name. She further testified that she had a "suspicion" that her husband was growing marijuana again. The circuit court, in concluding that the petitioner "failed to protect the children and find a fit, suitable and safe home for them," properly found that there was sufficient evidence to support a conclusion that the petitioner purposefully ignored what

---

[3]The DHHR noted during oral argument that the petitioner and her husband were required to get treatment for A.C. stemming from a previous abuse and neglect charge in Pennsylvania.

[4]The petitioner's husband posted a message that he would "[l]ike to see all cops die and judges get capped." He later stated that his threat was prompted by the police confiscating his marijuana on previous occasions.

2

was happening in her home.[5]

The DHHR subsequently filed the instant *third* petition for abuse and neglect against the petitioner and her husband. The petition alleged that the petitioner "engages in the manufacturing and/or use of controlled substances and/or permits [her husband] to engage in the manufacturing and/or use of controlled substances and/or negligently fails to recognize that [her husband] is engaging in the manufacturing and/or use of controlled substances in the presence of the children which endangers the health, safety and welfare of the [children]."

At the adjudicatory hearing, the petitioner's husband admitted to abusing and neglecting the children through his continued use of narcotics and cultivation of marijuana. Although the petitioner denied participating in or having knowledge of her husband's marijuana cultivation, the circuit court found there was "substantial" evidence she knew about the production of marijuana at her home. The court noted that marijuana seeds were found in the refrigerator in a pill bottle bearing the petitioner's name; that a "grow lamp" was found inside the trailer, and that the weather conditions at that time of the year could not have supported the growth of the marijuana plants behind the house to the height of three feet had they been grown exclusively outdoors.[6] Furthermore, the guardian ad litem testified that the current situation was substantially identical to the previous abuse and neglect proceeding, and involved many of the same behaviors by the petitioner and her husband, including the growth of marijuana inside the family home. In its order entered on June 24, 2013, the circuit court, after taking judicial notice of the two prior abuse and neglect proceedings against the petitioner and her prior conviction for conspiracy to manufacture a controlled substance, found that she had abused and neglected her children.

A dispositional hearing was held on June 28, 2013. The petitioner's husband testified that he began growing marijuana at a hunting camp six miles from the family home,

---

[5]Although the petitioner subsequently tested negative for narcotics, there was evidence presented that she told someone she had taken a controlled substance the day the police executed the search warrant of the family home. Also, her husband tested positive for marijuana and medications for which he did not have a prescription.

[6]One of the responding officers testified that the plants were three and a half feet tall, and were located in a wooded area directly behind the residence. Based on his knowledge of the growing season, the trooper testified that the plants could not have simply grown wild in that location to that height; rather, they had been transplanted to that location. The petitioner's husband admitted the same, but claimed that he had transplanted them from another location—not from inside the home.

but that the petitioner had no knowledge of his operations. He further testified that the children knew about his cultivation of marijuana, but that he had instructed them not to tell their mother. The petitioner testified that despite the presence in the family home of marijuana, a lamp used for the indoor cultivation of plants, and the marijuana seeds in the refrigerator in a pill bottle with her name on it, she had no idea that her husband had resumed cultivating marijuana.

In its dispositional order, the circuit court found that the petitioner and her husband had repeated the same offenses and continually failed to provide a stable environment for the two children. The circuit court further found that the children had suffered repeated emotional distress by the parents' failure to provide them with a suitable, drug-free home, which resulted in their repeated removal from the home. The circuit court concluded that there was "absolutely no likelihood to believe that the . . . parents will substantially correct the circumstances of abuse and neglect in the foreseeable future." In its order entered July 29, 2013, the circuit court terminated the petitioner's parental rights, finding sufficient evidence that she was aware of the marijuana cultivation in the family home. This appeal followed.

This Court utilizes a compound standard of review in appeals stemming from abuse and neglect proceedings, as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

In her appeal, the petitioner makes two assignments of error. First, she asserts

4

that the circuit court erred in adjudicating her as having abused and neglected her children given the absence of direct evidence to support the court's finding that she had knowledge of her husband's marijuana cultivation operation. Second, she argues the circuit court made several factual errors which warrant reversal of the circuit court's order terminating her parental rights. The DHHR responds by noting the clear, convincing, and overwhelming evidence against the petitioner. The DHHR argues that because there is no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future, the termination of her parental rights served the best interest of the children. Accordingly, the DHHR urges this Court to affirm the circuit court's orders in this matter. The guardian ad litem concurs with the DHHR, noting that for the past six years, the parents had been involved in abuse and neglect proceedings, yet had failed to correct the abuse and neglect. For these reasons, the guardian ad litem asserts that reunification is not in the best interests of the children.

The State bears the burden of establishing that the children have been abused and neglected "by clear and convincing proof." West Virginia Code § 49-6-2(c) (2012). The evidence, taken as a whole, must be enough to convince the trier of fact that the burden has been met. As we have noted, "Courts oftentimes must rely upon circumstantial evidence finding a parent liable for failing to protect his or her child from abuse even though he or she never actively participated in the abuse." *In re Jonathan Michael D.*, 194 W.Va. 20, 26, 459 S.E.2d 131, 137 (1995).[7] Parents often choose to support the other's version of events, thus, there may be no other source for direct evidence. Moreover, children are often either too young to testify with any reliability, or they have been swayed by advice or threats from their parents to mold their testimony so as to match the parents' narrative.

As discussed above, the evidence in this case is substantial. Accordingly, we find that there was sufficient evidence upon which the circuit court based its conclusion that the petitioner was abusive and neglectful of her children.[8]

---

[7]*See also In re Interest of McCauley H.,* 529 N.W.2d 77 (1995) (finding that circumstantial evidence may be used to establish child abuse or neglect); *Matter of S.J.Z.*, 252 N.W.2d 224 (1977) (finding that circumstantial evidence could establish child abuse or neglect, as requiring direct proof in circumstances would place too heavy a burden on the State and ignore the best interests of the children).

[8]While not alleged as a separate assignment of error, the petitioner argues in the alternative that the circuit court should have employed a less restrictive disposition than the termination of her rights, assuming she was properly adjudicated. However, as we have stated:

(continued...)

Turning to the petitioner's second assignment of error, she argues that the circuit court made several erroneous factual findings which warrant a reversal of the termination of her parental rights. First, she contends that the pill bottle containing marijuana seeds and bearing her name, which was recovered from the refrigerator, was not in "plain view," as the circuit court found. Based upon our review of the appendix record, we conclude that the circuit court's use of the phrase "plain view" does not reflect a misapprehension of the facts forming the basis of its ruling. The bottle itself bore the petitioner's name, and it was kept in the refrigerator which the petitioner testified she accessed to prepare family meals.

Second, the petitioner argues that the marijuana plants found approximately one hundred twenty yards behind the family home were not in "proximity" to her home, as the circuit court found. "Proximity" is defined as "[t]he quality, state, or condition of being near in time, place, order, or relation." Black's Law Dictionary 1421 (10th ed. 2014). The marijuana plants were found in the woods directly behind the family home, and the petitioner's husband admitted that the plants were there with his knowledge.

---

(...continued)

> Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code § 49-6-5 may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code § 49-6-5 that conditions of neglect or abuse can be substantially corrected.

Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980) (internal citations omitted). Further, West Virginia Code § 49-6-5(b) (2012) provides that "no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected" means that "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.*

In the case *sub judice*, the circuit court took judicial notice of the prior abuse and neglect petitions against the petitioner, observing that the circumstances giving rise to the instant matter were substantially similar to the 2011 abuse and neglect proceeding involving the cultivation of marijuana in the home. In that prior proceeding, the children were returned to the custody of the petitioner and her husband, and it was incumbent upon them to provide a proper, safe and drug-free home for the children. They failed to do so, and the record reflects that they have shown no capacity to remedy their abusive and neglectful conduct.

Finally, the petitioner maintains that the circuit court improperly stated that "lights" used for indoor cultivation were found on the premises when only one such light was found. Regardless of the number of "lights," the presence of any such light is germane to the petitioner's knowledge of her husband's activities. Indeed, the purpose of the light must clearly have been known to the petitioner given her prior felony conviction for conspiracy to manufacture the controlled substance.

Based on the foregoing, we find no error in either the circuit court's June 19, 2013, order adjudicating the petitioner as an abusive and neglectful parent, or its July 29, 2013, order terminating her parental rights to her children A.C. and C.K., Jr., both of which are hereby affirmed.

Affirmed.

**ISSUED:** June 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7