IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE ESTATE OF FLEMMING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF ADENA C. FLEMMING, DECEASED.

YOLANDA BYERS, PERSONAL REPRESENTATIVE OF THE ESTATE OF
ADENA C. FLEMMING, DECEASED, APPELLEE,

V.

DENNIS C. JACKSON, APPELLANT.

Filed March 29, 2016.    No. A-13-1094.

Appeal from the County Court for Douglas County: THOMAS K. HARMON, Judge. Affirmed.

Dennis C. Jackson, pro se.

No appearance for appellee.

MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

Dennis C. Jackson appeals from an order of the county court for Douglas County denying his motion to remove his sister, Yolanda Byers, as the personal representative of the estate of his deceased mother, Adena C. Flemming, and authorizing Byers to sell Flemming's real estate. Jackson, who is incarcerated at Tecumseh State Correctional Institution (Tecumseh), argues the county court erroneously denied his request to participate telephonically in the evidentiary hearing resulting in the order from which he appeals. He also challenges the order on the merits and raises various other issues. For the following reasons, we affirm.

- 1 -

BACKGROUND

On December 25, 2011, Flemming died intestate in Douglas County, Nebraska. Her surviving heirs were her three adult children: her daughter, Byers; her son, David Moore, who is not involved in this appeal; and her other son, Jackson.

On April 12, 2012, following Flemming's death, Byers filed in the county court a "Petition for Formal Adjudication of Intestacy, Determination of Heirs, and Appointment of Personal Representative," seeking, among other things, to have herself appointed personal representative of Flemming's estate. On August 15, the county court appointed Byers personal representative.

On November 14, 2012, Byers filed a "Short Form Inventory," listing a total of $71,870.37 in assets in Flemming's estate: a home located on 16th Street in Omaha, Nebraska, valued at $40,000; household and personal items valued at $7,500; checking and savings accounts totaling $11,214.98; a "Federal/State Income Tax Refund" of $1,700; a vehicle valued at $1,600; and a retirement account of which Byers was the beneficiary. The inventory also listed a mortgage of $11,801.31 and a home equity loan of $7,848.98; the home equity loan had been paid with "life insurance proceeds."

On March 29, 2013, Byers filed a "Formal Petition for Complete Settlement after Formal Intestate Proceeding." She requested a hearing to (1) approve her final accounting, which also was filed on March 29; (2) approve her past and proposed distributions in accordance with an attached "Schedule of Distribution"; and (3) discharge herself as personal representative. The hearing was scheduled for May 1.

On April 19, 2013, Jackson, who was represented by counsel, filed a pro se motion requesting that the hearing on Byers' petition be held by video or telephonic conference. On April 29, Jackson's attorney filed a separate motion to allow Jackson and his attorney to appear by telephone at the hearing. Also on April 29, Jackson's attorney filed an objection to Byers' proposed distribution of estate property.

On May 1, 2013, the county court entered an order noting that the "matter at bar is contested, and should be rescheduled for a contested hearing." An evidentiary hearing was initially scheduled for July 8; it was later rescheduled to October 11 on Byers' motion.

On or about July 25, 2013, (the file stamp is not readable but the order otherwise reflects this date) the county court entered an order denying Jackson's request for an appraisal of Flemming's real estate (it appears from our record that Jackson's attorney communicated Jackson's request for an appraisal in a letter to the court dated July 20). The July 25 order indicated that the evidentiary hearing remained scheduled for October 11 and that "all parties" and their counsel "are ordered to be present on that date." It further stated that "[n]o other Motions will be heard absent compelling circumstances and consent of the Court."

On August 1, 2013, Jackson filed a pro se "Motion to Alter or Amend" in which he asked the court to reconsider its denial of his request for an appraisal. The court did not rule on this motion until after the October 11 evidentiary hearing.

On October 7, 2013, Jackson's attorney filed a motion to remove Byers as personal representative and appoint a disinterested third party. On the same date, Jackson's attorney filed a

motion requesting that Jackson be allowed to "testify and be present" by telephone at the October 11 hearing.

At the October 11, 2013, evidentiary hearing, Byers was present with her attorney; Jackson was not present but was represented by his attorney. At the commencement of the hearing, Jackson's attorney reminded the court of his pending motion to allow Jackson to appear by telephone and indicated Jackson was available at Tecumseh by phone. Byers' attorney objected based on Neb. Rev. Stat. § 25-2704(2) (Reissue 2008), which required a stipulation of the parties before an evidentiary hearing could be conducted telephonically; Byers' attorney indicated that Byers had not so stipulated. The court denied Jackson's request.

The evidentiary hearing proceeded, and Byers was the only witness to testify. We discuss the pertinent details of Byers' testimony in the analysis section below. Generally, Byers testified to her actions as personal representative and submitted into evidence her short form inventory, her final accounting, and her proposed schedule of distribution, among other documents. Jackson's attorney cross-examined Byers regarding inconsistencies among the documents, and objected to Byers' testimony and evidence when appropriate. In addition, Jackson's attorney admitted into evidence a "Schedule of Values" that Byers filed with the court on April 12, 2012, which revealed further inconsistencies. Otherwise, Jackson's attorney was unsuccessful in introducing evidence; the court sustained objections to his exhibits 11, 12, 13, and 14, all of which consisted of letters between Byers' attorney and Jackson's attorney or between Jackson personally and Byers' attorney.

At the conclusion of the hearing, the court took the matter under advisement, and on October 15, 2013, the court entered an order directing the parties to submit briefs addressing two issues: (1) whether Jackson had the right, while incarcerated, to appear telephonically without Byers' consent, and (2) whether the court should order the real and personal property sold or distributed in-kind. Also in the October 15 order, the court struck Jackson's August 1 "Motion to Alter or Amend," reasoning that Jackson did not have the right to file motions while represented by an attorney. The court ordered that Jackson "may not file any further *pro se* pleadings in this case, except a Motion to Discharge counsel should he wish to represent himself." On October 18, Jackson filed an "Affidavit of Dennis C. Jackson" in which he stated that his attorney was "no longer [his] attorney of record."

On October 21, 2013, Jackson's attorney filed a brief addressing the two issues identified in the court's order. He argued that although there was "no direct statute on point giving a 'right' to an incarcerated individual to appear by phone or video conference," the issue was "one which is decided by the due process rights of the heir." Regarding the issue of whether the real and personal property should be sold or distributed in-kind, Jackson's attorney indicated he had not had an opportunity to speak with Jackson to learn his wishes, but that during negotiations Jackson had agreed the personal property should be sold at an estate auction.

Also on October 21, 2013, Jackson's attorney filed a motion to withdraw as counsel of record for Jackson. The record before us does not contain an order ruling on the motion to withdraw, but it appears that thereafter Jackson represented himself.

On November 12, 2013, the county court entered an order deciding four primary issues: (1) citing § 25-2704(2), the court denied Jackson's request to provide testimony via telephone

since "no party attempted to enter into a stipulation regarding telephonic testimony"; (2) it authorized Byers to sell the real estate because "distribution 'in-kind' would result in execution of a deed that would vest title in" Byers, Moore, and Jackson, "who obviously do not 'get along'"; (3) it ordered Byers to prepare an amended final accounting, because "[t]he accounting records submitted by [Byers] do not accurately reflect assets and expenditures to the degree that is necessary so that the Court can rule on the veracity of the accounting"; and (4) it denied Jackson's motion to remove Byers as personal representative, since "there was no evidence adduced at trial that assets of the Estate were shown to have been lost or wasted during its administration."

Jackson timely appealed to this court. Initially, the county court denied Jackson in forma pauperis (IFP) status; however, after two remands by this court, the county court granted Jackson IFP status on February 10, 2015.

## ASSIGNMENTS OF ERROR

Jackson assigns 17 errors, which we have consolidated, reordered, and restated as follows: The county court erred in (1) denying Jackson's motion to appear by telephone or other electronic means; (2) ruling on the admissibility of certain testimony and exhibits; (3) denying Jackson's motion to remove Byers as personal representative; (4) denying Jackson's request for an appraisal; (5) authorizing Byers to sell the real estate; (6) striking Jackson's pro se "Motion to Alter or Amend" and refusing to consider filings from Jackson while he was represented by counsel; and (7) ordering that no other motions would be heard in the absence of compelling circumstances and the court's consent.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Shell*, 290 Neb. 791, 862 N.W.2d 276 (2015). When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below. *Id.* Statutory interpretation presents a question of law, *Schaffer v. Cass County*, 290 Neb. 892, 863 N.W.2d 143 (2015), as does the issue of whether the procedures afforded an individual comport with constitutional requirements for procedural due process. *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). The exercise of judicial discretion is implicit in determining the relevance of evidence, and we will not reverse a trial court's decision regarding relevance absent an abuse of discretion. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

### REQUEST TO APPEAR TELEPHONICALLY

Jackson argues the county court erred in denying his request to appear telephonically so he could testify at the October 11, 2013, evidentiary hearing. He contends that § 25-2704(2), requiring the stipulation of all parties before the court may conduct an evidentiary hearing telephonically or by videoconferencing or similar equipment, "only applies to those instances where an entire hearing may be scheduled via telephonic or video conferencing" and "may not apply to individual appearances and testimony." Brief for appellant at 16. He also maintains his testimony was necessary and that prison inmates have a constitutional right to adequate, effective, and meaningful access to the courts. Byers has not filed a brief, so her positions on the issues raised by Jackson are unknown.

As stated, in denying Jackson's request to participate telephonically in the evidentiary hearing, the county court relied on § 25-2704(2), which requires court approval and "stipulation of all parties that have filed an appearance" before "any evidentiary hearings . . . may be heard by the court telephonically or by videoconferencing or similar equipment." Although Jackson contends this statute applies only to the scheduling of an "entire hearing" and not to "individual appearances and testimony," brief for appellant at 16, we need not address this issue, as another statute provides an adequate basis for the court's order.

While not cited below by either party or the county court, Neb. Rev. Stat. § 24-734(4) (Cum. Supp. 2014) provides: "A judge, in any case with the consent of the parties, may permit any witness who is to be examined by oral examination to appear by telephonic, videoconferencing, or similar methods, with any costs thereof to be taxed as costs." The statute was enacted on May 7, 2013, approximately 5 months before the evidentiary hearing in this case. See 2013 Neb. Laws, L.B. 103. Thus, although the county court may not have identified the specifically applicable statute in its ruling, its conclusion that Jackson could not testify by telephonic, videoconferencing, or similar methods without Byers' consent was proper.

Now that we have determined Jackson did not have a right to testify by telephonic, videoconferencing, or similar methods without Byers' consent, we turn to Jackson's broad assertion below and on appeal that he was denied his constitutional right to adequate, effective, and meaningful access to the courts. We interpret this as an assertion of his procedural due process rights under the United States and Nebraska Constitutions, which provide that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V and XIV; Neb. Const. art. I, § 3. Procedural due process is an "inherently flexible" concept; its "'central meaning'" is that "'[p]arties whose rights are to be affected are entitled to be heard.'" *In re Interest of L.V.*, 240 Neb. 404, 413, 482 N.W.2d 250, 257 (1992), quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

The Nebraska Supreme Court has held that "[a] prison inmate has no absolute constitutional right to be released from prison so that he can be present at a hearing in a civil action, and there is no authority which requires the appointment of counsel to represent him in a private civil matter." *Caynor v. Caynor*, 213 Neb. 143, 144-45, 327 N.W.2d 633, 635 (1982). Nevertheless, courts of this state have recognized that prison inmates have a right to procedural

due process in civil cases, even if not through physical presence; some of the circumstances supporting a determination that an inmate was afforded procedural due process have been that the prisoner received notice of the proceeding, was represented by counsel, and had an opportunity to present testimony by deposition. See *In re Interest of L.V., supra*, and cases cited therein. See, also, *Board of Regents v. Thompson*, 6 Neb. App. 734, 577 N.W.2d 749 (1998) (incarcerated defendant in debt collection action was not required to be physically present but had to be given an opportunity to present her side of the case).

In *In re Interest of Azia B.*, 10 Neb. App. 124, 626 N.W.2d 602 (2001), an incarcerated mother was represented by counsel at a termination-of-parental-rights hearing. The mother's motion for a continuance so she could appear at trial upon her release from prison, and the mother's motion to testify telephonically, both of which were made on the day of trial, were denied. This court held it was not an abuse of discretion to deny her motions, largely because she did not make the requests until the day of trial. *Id*. We also reasoned that the mother's due process rights were not violated, since she was represented by counsel, who cross-examined witnesses and presented evidence at the hearing, and since there was "no showing that [the mother] was prevented from offering evidence on her behalf." *Id*. at 131, 626 N.W.2d at 609.

Here, even though the county court scheduled the October 11, 2013, evidentiary hearing in an order dated June 18, Jackson's motion to participate telephonically in the evidentiary hearing was not brought until October 7, only 4 days prior to trial. While Jackson and his attorney filed motions in April to appear telephonically at a previously scheduled hearing, they did not renew those motions once the court noted the matter was contested and rescheduled it for an evidentiary hearing on October 11.

Because of the delay in bringing the motion to participate telephonically, Jackson and his attorney left themselves little opportunity to arrange alternative means to present Jackson's testimony once the county court denied the motion. Notably, Neb. Rev. Stat. § 25-1233(1) (Reissue 2008) permits any prisoner in this State to be examined by deposition, where the prisoner is incarcerated outside the county of the venue of trial. *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993). We take judicial notice that Tecumseh is located in Johnson County, Nebraska, while venue was in Douglas County, which meant Jackson could have presented his testimony via deposition.

When the county court asked Jackson's attorney at the October 11, 2013, evidentiary hearing whether he had attempted to schedule Jackson's deposition, counsel responded that there was "no money" for a deposition and that he had not arranged for a deposition because the court's July 25 order indicated that "all parties" were "to be present" at the hearing. We place little stock in these arguments, because the time to resolve the issue of how to present Jackson's testimony was well before October 7, especially considering that § 24-734(4) was enacted more than 5 months prior to the hearing and should have put Jackson and his attorney on notice of the need to arrange alternative means to present his testimony, assuming they could not obtain Byers' consent to telephonic testimony.

We acknowledge that unlike in *In re Interest of Azia B., supra*, where there was "no showing that [the mother] was prevented from offering evidence on her behalf," *id*. at 131, 626 N.W.2d at 609, there was some indication that Jackson's absence hampered his attorney's ability

to present evidence. Most importantly, Jackson was unavailable to lay foundation to authenticate the letters contained in exhibits 11, 12, 13, and 14. On appeal, Jackson indicates these letters were relevant to showing his and his attorney's repeated requests for documentation from Byers and her attorney, which would have supported Jackson's claim that Byers neglected her duties as personal representative.

While we agree the letters were relevant for this purpose, this consideration does not convince us that Jackson was denied procedural due process. Byers' failure to produce adequate documentation was apparent to the county court and formed the primary basis for the court's decision to order Byers to submit an amended accounting. Upon reviewing Byers' accounting and other documentary evidence, it is clear that she failed to adequately document all estate assets, receipts, and disbursements. Because the county court was aware of the lack of documentation and ordered an amended accounting and further hearing (the court noted in its November 12, 2013, order that the adequacy of the amended accounting would have to be reviewed at a future hearing), Jackson's interests have been protected despite his inability to participate in the hearing.

## EVIDENTIARY RULINGS

Jackson challenges a number of the county court's evidentiary rulings. He argues the court abused its discretion in admitting Byers' testimony as to the reasons for his incarceration and the length of his incarceration, Byers' use of personal funds to pay estate expenses, and Byers' payment of taxes for her mother's "last wages." Jackson also challenges the admission of a retirement account statement dated June 30, 2012, which allegedly showed the funds that had been rolled over from Flemming's 401(k) into an Individual Retirement Account (IRA) in Byers' name. Jackson also contends it was error for the court to take judicial notice of the opinion issued in his direct appeal of his criminal convictions. Finally, Jackson argues the court abused its discretion in excluding from evidence exhibits 11, 12, 13, and 14.

We first address Jackson's challenge to Byers' testimony regarding her payment of taxes for Flemming's last wages. Jackson's attorney did not object the first time Byers testified to this matter (Byers addressed the matter twice and Jackson's attorney objected only the second time). Therefore, the issue has not been preserved for appeal. See *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010) (to preserve a claimed error in admission of evidence, a litigant must make a timely objection which specifies the ground of the objection).

We next address Jackson's challenges to Byers' testimony concerning her use of personal funds to pay estate expenses, and to the retirement account statement. Jackson argues his attorney's objections to this evidence should have been sustained, but he has not identified any prejudice to him resulting from its admission. Therefore, he has not established reversible error. See *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015) (in civil case, admission of evidence is not reversible error unless it unfairly prejudiced a substantial right of complaining party).

We now address Jackson's challenges to Byers' testimony as to why he was incarcerated and when he was first incarcerated, and to the taking of judicial notice of the opinion issued in the appeal of his criminal convictions. Jackson contends these matters were irrelevant and prejudicial in that they portrayed him in a negative light. We agree with Jackson that these matters were irrelevant, especially since Jackson did not testify and was not subject to impeachment with his

prior convictions. See Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 2008) (allowing under certain circumstances for impeachment by prior criminal conviction).

However, we disagree with Jackson that the error requires reversal. The orders Jackson challenges on appeal denied Jackson's motion to remove Byers as personal representative, authorized Byers to sell Flemming's real estate, and denied Jackson's request for an appraisal of the real estate. The court adequately articulated its reasoning for each of these decisions, and there is no indication that Jackson's incarceration or prior convictions played any role in the court's decision-making. We find no prejudice to Jackson's rights requiring reversal.

We now turn to the court's refusal to admit exhibits 11, 12, 13, and 14. As we explained above, to the extent these exhibits showed Jackson's and his attorney's requests for documentation from Byers and her attorney, they were relevant. However, even overlooking any issues regarding the lack of foundation to authenticate the letters, their exclusion from evidence resulted in no prejudice to Jackson. Again, Byers' failure to produce adequate documentation was apparent to the county court, and the issue was addressed by ordering an amended accounting, the adequacy of which will be reviewed at a future hearing.

Any other information contained in the letters was not admissible in evidence. In particular, the letters contained the attorney's legal arguments and statements of the parties' legal positions, which do not constitute relevant evidence. See *In re Interest of McCauley H.*, 3 Neb. App. 474, 529 N.W.2d 77 (1995) (a letter containing an attorney's pretrial view of the case was not relevant evidence). In addition, while only exhibit 12 was objected to on hearsay grounds, portions of that exhibit were inadmissible on that basis. See Neb. Evid. R. 801, Neb. Rev. Stat. § 27-801 (Reissue 2008) (hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

REMOVAL OF PERSONAL REPRESENTATIVE

Jackson also argues the county court erred in denying his motion to remove Byers as personal representative for cause. He asserts five bases for Byers' removal: (1) she filed an inadequate inventory that failed to identify the estate's property with reasonable detail or list its fair market value; (2) she misappropriated estate funds for personal profit and gain; (3) she paid her personal attorney fees using estate funds without court approval; (4) she failed to keep the estate heirs adequately apprised of the status of the inventory and proceedings; and (5) she falsified documents submitted to the court.

Neb. Rev. Stat. § 30-2454(a) (Reissue 2008) permits a person interested in the estate to petition for removal of a personal representative for cause at any time. Section 30-2454(b) provides:

Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

A personal representative's duties include settling and distributing the decedent's estate as expeditiously and efficiently as is consistent with the best interests of the estate. Neb. Rev. Stat. § 30-2464 (Reissue 2008). In addition, within 3 months after appointment, a personal representative is to prepare and file an inventory of property owned by the decedent at the time of death, which lists the decedent's property with reasonable detail and includes fair market values. Neb. Rev. Stat. § 30-2467 (Reissue 2008).

Here, Byers complied with her duty to file an inventory of Flemming's property within 3 months of her appointment, and her testimony at trial indicated she took steps toward settling the estate with the goal of expeditiously distributing it equally among the three heirs. In particular, the evidence showed Byers filed Flemming's federal and state tax returns, paid claims against the estate for an unpaid furniture bill and unpaid medical bills, and paid the mortgage, property taxes, utilities, and other expenses associated with Flemming's real estate. While Jackson asserts Byers misappropriated estate funds, there is no evidence to support this; in fact, the evidence was that Byers used her personal funds to pay many of the expenses associated with Flemming's real estate, and Byers indicated she was not seeking reimbursement.

To the extent Jackson relies upon the lack of documentation supporting Byers' final accounting, or upon inconsistencies among Byers' inventory, final accounting, and other documents, we disagree that these required removal of Byers as personal representative. While the lack of documentation and the inconsistencies are apparent upon review of the evidence, the county court's finding that "there was no evidence adduced at trial that assets of the Estate were shown to have been lost or wasted during its administration" was not clearly erroneous. The discrepancies are not substantial, and there is no reason to believe an amended accounting will not resolve them. Furthermore, none of the evidence suggests Byers falsified documents.

Finally, Byers' use of $1,404 in estate funds to pay attorney fees (as reflected on Byers' final accounting) does not warrant her removal as personal representative. Neb. Rev. Stat. § 30-2481 (Reissue 2008) provides that "[i]f any personal representative . . . defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." The issue of whether the attorney fees were reasonable and incurred in good faith will be for the county court to decide when addressing Byers' amended accounting. See *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985) (the fixing of reasonable fees pursuant to § 30-2481 is within the county court's sound discretion).

REQUEST FOR APPRAISAL

As discussed above, a personal representative's duties include submitting an inventory that, among other things, lists the fair market value of the decedent's property at the time of death. § 30-2467. A personal representative "may employ a qualified and disinterested appraiser to assist him in ascertaining the fair market value as of the date of the decedent's death of any asset the value of which may be subject to reasonable doubt." Neb. Rev. Stat. § 30-2468 (Reissue 2008). According to Jackson, the county court erred in declining to require an appraisal of Flemming's real estate in this case.

At the hearing on Jackson's request for an appraisal, Byers' attorney submitted a print-out from the Douglas County Assessor's website showing that the assessed value of the real estate for tax purposes was $30,400. In her short form inventory, Byers estimated the fair market value of the property to be $40,000. Neither Jackson nor his attorney was present at the hearing; Jackson's attorney submitted an affidavit which he asked the court to consider in his absence. In the affidavit, he stated Jackson had advised him that Jackson believed the home was worth more than $40,000 "based upon his knowledge that his mother had completed a number of renovations to the home prior to her death."

In its July 25, 2013, order denying Jackson's request for an appraisal, the county court reasoned that if the property was distributed in-kind in equal shares, as Byers was proposing at the time, there was no need for an appraisal. The court further reasoned that if the property was sold and the proceeds divided equally, there was no need for an appraisal, since "the market would control the value based upon its sale at fair market value." The court reasoned that "the interests of all parties including [Jackson] will be adequately protected without an appraisal." At trial, Byers indicated she had no objection to selling the property and dividing the proceeds equally among the heirs.

We find no error in the court's denial of Jackson's request for an appraisal. Jackson's general claim, asserted in the form of his attorney's affidavit, that his mother had completed unspecified renovations to the home increasing its value, was not enough to create reasonable doubt about the home's value. The court had no reason to believe that Byers' valuation of $40,000, which exceeded the assessed value by 31.5%, was inaccurate. Furthermore, because the home has been ordered sold "on the most advantageous and most beneficial . . . terms obtainable," and because the proceeds will be divided equally among the three heirs, we agree with the county court that Jackson's property interest in the home has been adequately protected without an appraisal.

AUTHORITY TO SELL REAL ESTATE

Jackson also argues the county court erred in authorizing Byers to sell Flemming's real estate without providing Jackson a meaningful opportunity to address whether the property should be sold. Jackson notes that on October 15, 2013, the court ordered the parties to submit briefs addressing whether the estate's real and personal property should be sold or distributed in-kind. Jackson notes that when the court and the parties' attorneys were discussing the briefing schedule, Jackson's attorney indicated he would not be meeting with Jackson at Tecumseh for 14 days; nevertheless, the court ordered the briefs due on October 21. In Jackson's attorney's brief filed on that date, counsel indicated he had not had an opportunity to speak with Jackson to learn his wishes, but that during negotiations Jackson had agreed the personal property should be sold at an estate auction.

While Jackson's attorney's inability to meet with Jackson prior to submitting the brief was unfortunate, we cannot conclude Jackson was denied procedural due process. The distribution of Flemming's real estate was an issue at the October 11, 2013, evidentiary hearing, and we concluded above that Jackson was afforded procedural due process at that hearing. Additionally, while Jackson's attorney indicated in his brief that he was unable to learn Jackson's wishes regarding the real estate, the record before us includes more than one pro se document submitted

by Jackson indicating his desire that the real estate be sold. Therefore, Jackson's due process rights have not been infringed.

### AUTHORITY TO FILE PRO SE PLEADINGS

Jackson argues the county court erred in striking his pro se "Motion to Alter or Amend" the order denying his request for an appraisal and in refusing to consider any other pro se filings from Jackson while he was represented by counsel. In its October 15, 2013, order, the court struck Jackson's "Motion to Alter or Amend," reasoning Jackson did not have the right to file motions while represented by an attorney. The court ordered that Jackson "may not file any further *pro se* pleadings in this case, except a Motion to Discharge counsel should he wish to represent himself."

The Nebraska Supreme Court has held in the context of a criminal case that a defendant does not have a right to "hybrid representation" in which the pro se defendant appears as cocounsel with his or her appointed attorney. *State v. Wilson*, 252 Neb. 637, 652, 564 N.W.2d 241, 252 (1997). Rather, it is within a trial court's discretion to allow this type of representation. *Id*.

Although Jackson has not cited, and our research has not uncovered, any Nebraska case addressing the issue of "hybrid representation" in a civil case, a number of courts have held that a civil litigant who is represented by counsel has no right to personally conduct any aspect of the litigation except through counsel. *Brasier v. Jeary*, 256 F.2d 474 (8th Cir. 1958); *Lincoln v. Lincoln*, 746 P.2d 13 (Ariz. Ct. App. 1987); *Thomas v. National State Bank*, 628 P.2d 188 (Colo. Ct. App. 1981); *Waite v. Wellington Boats, Inc.*, 459 So. 2d 431 (Fla. Dist. Ct. App. 1984); *Watson v. Gibson Capital, L.L.C.*, 2008 OK 56. See, also, Annot., Right of Litigant in Civil Action Either to Assistance of Counsel Where Appearing Pro Se or to Assist Counsel Where Represented, 67 A.L.R.2d 1102 (1959); 7A C.J.S. Attorney & Client § 246. In *Brasier, supra* at 478, the court noted that "in rare circumstances it might be good practice and could aid in the fair presentation of claim or defense if a party were allowed to actively participate in the conduct of the trial, even though represented by counsel"; however, the court noted that such a determination rested squarely within the trial court's discretion. *Id*.

Here, there was nothing to indicate that allowing Jackson to file pro se motions or pleadings while represented by counsel was necessary to the fair representation of his positions. Jackson's "Motion to Alter or Amend" was largely a reiteration of information the county court had already considered in addressing Jackson's request for an appraisal. Therefore, we conclude the county court did not err in striking Jackson's pro se motion or in prohibiting him from submitting further pro se filings.

### LIMITATION ON FILING ADDITIONAL MOTIONS

Jackson's final argument is that the county court erred in ordering on July 25, 2013, that "[n]o other Motions will be heard absent compelling circumstances and consent of the Court." We need not resolve the propriety of this order, because there is no indication the court enforced this limitation. Following entry of the July 25 order, Jackson filed his "Motion to Alter or Amend" and Jackson's attorney filed a motion to remove Byers as personal representative and a motion to permit Jackson to testify telephonically. The court addressed all of these motions, and it did not

strike any of them for failure to comply with the requirement of presenting "compelling circumstances."

CONCLUSION

For the foregoing reasons, we affirm the judgment of the county court for Douglas County.

AFFIRMED.